O’NIELL, O. J.
The question propounded is whether a municipal ordinance which appellant stands convicted of having violated is contrary to the due process clause and the equal protection clause of the Fourteenth Amendment (section 1).
The ordinance, styled “Ordinance No. 26 of 1923,” makes it an offense, and imposes' a penalty of fine and imprisonment, for any person, firm, or corporation to ow(n or conduct a junk business, or to possess "any junk, within a designated and so-called fire district, unless the junk is kept in a brick building.
The judge of the city court ruled that all doubts about the validity of the ordinance should be resolved in its favor because, as he believed, the municipal council was authorized specifically to enact such legislation, by the terms of the fifteenth paragraph and of the twenty-second paragraph of the eleventh section of the city charter, Act 158 of 1898, as amended by Act 201 of 1902 (page 387), by Act 67 of 1904 (page 177), by. Act 283 of 1908 (page 415), and by Act 220 of 1912 (page 498).
The paragraphs referred to ■ are in the enumeration of the purposes for which the municipal council has authority to enact “such by-laws and ordinances as are necessary and proper,” viz.:
“Fifteenth — To regulate pawnshops, loan offices, secondhand dealers, junk shops, and all owners thereof and dealers therein.
“Twenty-second — To prohibit and prevent the location or construction of any wooden or frame houses, store, shop, building or brick veneer structure on such streets, alleys, and places, or within such limits in the city ás it [the city council] may from time to time prescribe; and prevent or regulate the removal of wooden or frame buildings from any part of the city to any lot or location on such streets, alleys and places within such limits and the rebuilding or repairing of wooden or frame buildings on such streets, alleys and places within such limits when damaged by fire or otherwise.”
There is nothing in the paragraphs, quoted that .purports to sanction municipal legislation discriminating arbitrarily or capriciously against junk dealers or their business, or against any other class of tradesmen or trades.
The city attorney did not argue the case or file a brief in support of the ordinance complained of. It is manifest from the language of the ordinance that it was enacted under pretense of lessening the fire hazard — ■ that is, under pretense of exercising the police power to promote public safety. But the ordi *901 nance is not a proper exercise of the police power in that respect, because the discrimination against junk dealers is arbitrary. Their stock in trade is not more combustible or inflammable — in fact, it is much less so — -than the merchandise of many other classes of merchants. According to the dictionaries, and as a matter of common knowledge, the kind of junk that the junk dealers deal in consists mainly of old iron and other cast-off pieces of metal, empty bottles, and other such waste or discarded odds and ends that may be salvaged and put back into use in one form or another. Some of the junk dealers’ stock in trade, of course, is material that could be set on fire, but the business generally is not more hazardous in that respect than the business of many other classes of merchants. In fact, we doubt that the average stock in" trade of a hardware merchant is less inflammable or combustible than that of a junk dealer.
In comparison with furniture stores, dry goods stores, and clothing stores, and perhaps many other establishments, it is difficult to imagine why a junk dealer’s establishment should be proscribed as an extraordinary danger of fire. If we could imagine any plausible basis for this classification of the junk dealers, as distinguished from all other merchants, and for this discrimination against the junk dealers and in favor of all other merchants, we would be constrained to defer to the judgment of the municipal council — assume that the reason for the discrimination was sufficient — and declare' the ordinance valid. But we find it almost as hard to reconcile our judgment to the discrimination in this case as it would be if the ordinance proscribed dealers in asbestos, or fire extinguishers not kept in fireproof buildings.
In the case of Truax v. Corrigan, 257 U. S. 332, 333, 42 Sup. Ct. 129, 66 L. Ed. 263, the Chief Justice, for the court, said:
“Our whole system of law is predicated on the general, fundamental principle of equality of application of the law. * * * But the framers and adopters of this amendment were not content to depend on a mere minimum secured by the due process clause, or upon the spirit of equality which might not be insisted on by local public opinion. They therefore embodied that spirit in a specific guaranty.
“The guaranty was aimed at undue favor and individual or class privilege, on the one hand, and at hostile discrimination or the oppression of inequality, on the other. It sought an equality of treatment of all persons, even though all enjoyed the protection of due process. * * * Thus the guaranty was intended to secure equality of protection not only for all but against all similarly situated. Indeed, protection is not protection unless it does so. Immunity granted to a class, however limited, having the effect to deprive another class, however limited, of a personal or- property right, is just as clearly a denial of equal protection of the laws to the latter class as if the immunity were in favor of, or the deprivation of right permitted worked against, a larger class.”
The verdict and sentence appealed from are annulled.