ODOM, Justice.
 

 The defendant company operates a junk yard at the corner of Howard Avenue and Broad Street, an industrial district, in the City of New Orleans. Harry J. Klein, its president and general manager, was prosl ecuted in the First Recorder’s Court of New Orleans for violating Ordinances No. 14194 and 14283, Commission Council
 
 *999
 
 Series, of the City of New Orleans, the affidavit charging that the defendant company had failed to build and maintain a seven-foot tight board fence around its auto-wrecking and scrap-material yard, as required by Section 2 of said ordinance, as amended. Klein, the president and manager, was convicted and fined $25, and in default of the payment of the fine to serve 30 days in prison. He appealed from the conviction and sentence.
 

 Ordinance 14194, Commission Council Series, under which defendant was prosecuted, reads as follows, omitting Section 3, which prescribes the penalty for violating the ordinance, and Section 4, which provides that each day after the conviction a violation of the ordinance shall constitute a separate offense:
 

 “An ordinance to prevent the wrecking or the dismantling or storage for commercial purposes of any motor-driven vehicle or junk on the sidewalks, public streets and other public places, and/or to prevent the storing for sale of the wreckage or parts of any motor-driven vehicles; also, any iron or steel junk or rags on any open lot or parcel of ground not fenced in as described in Section 2 of this Ordinance, and to fix penalties for failure to comply with the ' provisions and requirements of this Ordinance.
 

 “Whereas, it is necessary in the interest of public safety and comfort that the sidewalks, streets and other public places be kept free from any obstructions that might make same unsafe, and
 

 "Whereas, the operation of many automobiles and other junk yards encroach on the sidewalks without any line of demarkation for property lines by fence or otherwise much to the inconvenience of the public good and welfare.
 

 “Section 1. Be it ordained by the commission council of the city of New Orleans, that from and after the passage of this Ordinance it shall be unlawful for any person, firm or corporation to wreck, dismantle or store for commercial purposes any motor-driven vehicle, automobile, auto truck or iron or steel junk or rags on the public sidewalks, public streets, and other public places.
 

 “Section 2. Be it further ordained, etc., that no person, firm or corporation shall be permitted to store or offer for sale any iron and steel junk, rags or wreck or wreckage of motor-driven vehicles or automobiles and/or auto truck on any open lot or parcel of ground that is not properly inclosed all around on all boundary lines with a proper, suitable and substantial fence not less than seven (7) feet nor more than ten (10) feet high, and further that the said fence must be kept in a constant state of good repair.”
 

 Ordinance 14283 amends Section 2 of the original ordinance. The section as amended is a copy, word for word, of the original, down to the word “substantial”. The original ordinance requires “a substantial fence not less than seven (7) feet nor more than ten (10) feet high”, while the section as amended requires a “substantial feather-edged board fence not less than seven (7) 1" x 12” ‘Nominal Size’ feather-edged boards high, nailed horizontally across 4” x 6" ‘Nominal Size’ wood
 
 *1001
 
 posts on 8' - 0" centers and set three feet into the ground”.
 

 The original and the amended section require that “the said fence must be kept in a constant state of good repair”.
 

 In limine, the defendant filed a demurrer and a motion to quash the affidavit on the ground that the ordinance, and particularly Section 2 thereof as amended, is unconstitutional because it is arbitrary, oppressive, and unreasonable, and violates Section 2, Article I, of the State Constitution, which provides that “No person shall be deprived of life, liberty or property, except by due process of law.”
 

 Defendant further alleged that the ordinance, especially Section 2 thereof, as amended, is discriminatory, and its adoption was an unauthorized, unwarranted, and illegal exercise of the city’s police power. The judge overruled the demurrer and the motion to quash on the ground, as stated by him, that “it is within police powers to enforce said Ordinances under the Constitution of the State of Louisiana, and of the United States”.
 

 Bills of exception were reserved to the ruling of the court.
 

 The question presented is whether the ordinance is constitutional. If it is, defendant is guilty, for it is admitted that the fence now surrounding the yard, where the scrap material, and possibly other junk, is stored, is not built according to the specifications set out in Section 2 of the ordinance as amended.
 

 It was proved at the trial that the yard is enclosed on all sides by a substantial mesh-wire fence, described as a “steel Page cyclone fence”, seven feet high, topped with three strands, of barbed wire, built at considerable expense. It was proved — in fact, it is admitted — that this fence adequately serves the purpose of preventing any material stored on the yard from encroaching upon the sidewalks or public ways; that it protects those who may use the public ways from injury or damage by coming in contact with the material stored on the yard; that those who use the sidewalks and public ways are as safe in such use as if no material of any kind were stored on the yard. It was proved that a strip seven feet wide along the fence on all sides was left, on which no material whatever was stored. The purpose of leaving this vacant space apparently was to prevent any of the material from protruding onto the sidewalk.
 

 Officer Albert Roux, who preferred the charge against defendant, was called as witness for the city, and was asked:
 

 “Q. Isn’t it true that the metal fence which presently surrounds this area suffices to keep in all the automobile wreckage or scrap iron from encroaching on the sidewalk or street or public ways? A. That is true.”
 

 Mr. Klein, president and manager of the company, was asked:
 

 “Q. Does this fence serve to keep the side walk, streets and other public places in the vicinity of your yard free from any obstruction that may make them unsafe? A. Yes.”
 

 Whereupon the judge remarked, “The Court admits that the evidence shows that
 
 *1003
 
 all of the junk, autos and wreckage is in an open wire fence enclosure and does not encroach on the sidewalk or street.” He said further, “The evidence shows that the junk, autos and wreckage is kept seven (7) feet from the said wire fence surrounding the described junk yard.” He gave as his reasons for convicting the defendant that the “open wire fence as shown by the evidence does not comply with the City Ordinance which requires a seven (7) foot tight board fence around such wrecking and junk yards as described in this case”, and that Mr. Klein, president and manager, “could easily comply with the law by erecting a legal fence within the wire fence * * * or he could comply otherwise or discontinue his business if he sees necessary”.
 

 So that, under the judge’s ruling, the defendant Klein, although the company has erected an expensive fence which protects those who use the public ways from all danger, must, under the penalty of fine or imprisonment, either build a fence that conforms to the letter with the specifications in Section 2 of the ordinance, as amended, or cease business. Therefore, if the ordinance is unconstitutional, defendant will be deprived of his liberty and his property without due process of law.
 

 Act No. 159 of 1912, as amended by Act No. 338 of 1936, delegates to the City of New Orleans all powers, privileges, and functions which have been conferred upon municipalities of this state by the Constitution, and specifically provides that the City of New Orleans shall have power “to exercise general police power”.
 

 Counsel for the city argue that the adoption of the ordinance was a reasonable and constitutional exercise of the city’s police power. It is not disputed by counsel for defendant that the city may, in the exercise of its police power, regulate and control the occupation of dealing in junk. It was held by this court in Shreveport v. Schultz, 154 La. 899, 98 So. 411, that, if the public health, welfare, or safety requires it, junk stores may be excluded from prescribed limits of a municipality, but that such a regulation must be reasonable. The same rule would necessarily apply to junk yards such as this defendant operates. Whether the City of New Orleans may legally require that junk yards adjacent to sidewalks or streets be fenced in, is not the point at issue. That is conceded by defendant. The defense here is that, in view of the declared purpose of the ordinance under attack, the requirements of Section 2 of the ordinance, relating to the kind of fence which operators of junk yards must erect around their yards, is an arbitrary and unreasonable exercise of the police power, because the requirement of a tight board fence instead of a substantial fence built of other material in no way tends toward the accomplishment of the object for which the city’s power was exercised in this case.
 

 The general rule which prevails here and elsewhere is stated as follows in 43 C.J., Section 228, page 227: “In order that a municipal regulation may be sustained as an exercise of the police power, the regulation must have for its object the prevention of some offense or manifest
 
 *1005
 
 evil or the preservation of the public health, safety, morals, or general welfare. The exercise of the police power must have a substantial basis. The power cannot be made a mere pretext for legislation that does not fall within it. There must be some clear, real, and substantial connection between the assumed purpose of the regulation and the active provisions thereof, and the provisions must in some plain, appreciable, and appropriate manner tend toward the accomplishment of the object for which the power is exercised.”
 

 This general statement of the law is supported by many decisions of both state and federal courts. It is not necessary to review them.
 

 The ordinance has a lawful purpose, and the city was authorized under its police power to prescribe reasonable means to accomplish that purpose. The ordinance is a safety measure pure and simple. According to its clear and express language, it has but one purpose, which is to keep the sidewalks and public ways adjacent to junk yards free from rubbish or obstructions, so that such public ways may be safe passages for those who use them. According to the preamble, it is an ordinance “to prevent the wrecking or the dismantling or storage for commercial purposes of any motor-driven vehicle or junk on the sidewalks, public streets and other public places, * * * to prevent the storing for sale of wreckage or parts of any motor-driven vehicles; also, any iron or steel junk or rags on any open lot or parcel of ground not fenced in as described in Section 2 of this Ordinance”.
 

 Immediately following the preamble are the following declarations of purpose:
 

 “Whereas, it is necessary in the interest of public safety and comfort that the sidewalks, streets and other public places be kept free from any obstructions that might make same unsafe, and
 

 “Whereas, the operation of many automobiles and other junk yards encroach on the sidewalks without any line of demarkation for property lines by fences or otherwise much to the inconvenience of the public good and welfare”.
 

 Then follows Section 1, which provides that "it shall be unlawful for any person, firm or corporation to wreck, dismantle or store for commercial purposes any motor-driven vehicle, automobile, auto truck or iron or steel junk or rags on the public sidewalks, public streets and other public places”. '
 

 The means adopted by the City Council for keeping the sidewalks, public streets, etc., free from junk and wreckage “in the interest of public safety” is found in Section 2 of the ordinance, which provides that no one shall be permitted to store or offer for sale any junk on any parcel of ground that is not properly enclosed by a substantial fence not less than seven feet high. That section, as amended, required a “feather-edged board fence” not less than seven “feather-edged boards high”, nailed “horizontally” to 4" x 6” wood posts on 8' x 0" centers and set three feet in the ground.
 

 These specifications are inflexible. The planks must be “feather-edged” and twelve
 
 *1007
 
 inches wide, and must be nailed to posts “horizontally”. Fourteen six-inch “feather-edged” 'planks, nailed horizontally, would not suffice, although they would suffice to build the fence seven feet high. Nor would a tight plank fence made of twelve-inch “feather-edged” planks suffice if the planks stood upright, or perpendicular to the ground. Nor would a solid stone, brick, or cement wall seyen feet high, built on all sides of a junk yard, meet the requirements of the ordinance. The ordinance calls for a “feather-edged” board fence.
 

 The declared purpose of the ordinance being to make the sidewalks and public ways safe for pedestrians, there is no reason why a tight or solid wall fence of any particular kind should be required when a substantial fence of another kind, built of different material, serves the same purpose, as is the case here. The provisions of the ordinance, requiring that junk yards be enclosed with board fences and with no other kind, do not tend in any appreciable or appropriate manner toward the accomplishment of the object or purpose for which the city’s police power was exercised. This requirement is purely arbitrary and is unreasonable.
 

 Defendant’s property is enclosed by an expensive, substantial fence, which serves the purpose and intent of the ordinance. If, in order to escape punishment and remain in business, defendant must build another fence in literal compliance with the ordinance as written, his present fence will be worthless. It will, in effect at least, be destroyed for no purpose whatever.
 

 While the police power of municipalities is broad and far-reaching, it is not without limitations. In the exercise of that power, municipalities may go to the boundaries of reason but no further. The exercise of that power must have a substantial basis. On proper occasion and for adequate reasons, the power may be exercised to limit the use of private property, or even to destroy it. But the exercise of that power for such purposes, without adequate reasons, is a violation of the Due Process Clause of the State and Federal Constitutions. Const.La. art. 1, § 2; U.S.C.A.Const. Amend. 14.
 

 Municipal police power may not be exercised to infringe arbitrarily or unreasonably upon personal or private property rights. See “Municipal Corporations”, 43 C.J., Secs. 227, 229, 230, pp. 226, 228, 230; “Constitutional Law”, 6 R.C.L.', Secs. 194, 208, pp. 197, 213.
 

 The means adopted to attain the purpose sought to be accomplished by a municipality, under its police power, must be reasonable. In 6 R.C.L., Sec. 227, p. 237, it is stated that “there must be obvious and real connection between the actual provisions of a police regulation and its avowed purpose, and the regulation adopted must be reasonably adapted to accomplish the end sought to be attained”. See also Sec. 228, p. 239.
 

 Dealing in junk is a legitimate and harmless business. Junk yards are not necessarily nuisances. They do not affect the public health, nor do they offend against public morals. Individuals have the constitutional right to use their pri
 
 *1009
 
 vate property for junk yards as long as such use does not offend public morals or jeopardize the health and safety of the public. In speaking of the right of individuals to use their private property as they see fit, as long as their use of it is not offensive or dangerous, it is stated in American Jurisprudence, Volume 11, Sec. 279,' p. 1037: “Nevertheless, the owner has the right to erect such structures or to use the property for such legitimate purpose as he may see fit, utilizing such portions of it as he pleases, as long as in so doing he in no manner injuriously affects the public health, safety, morals, and general welfare. Any law abridging rights to a use of property, which use does not infringe the right of others, or limiting the úse of property beyond what is necessary to provide for the welfare and general security of the public is not a valid exercise of the police power.”
 

 There was considerable discussion at the bar relating to the question as to whether the city, under its police power, may restrict the use of private property for junk yards to designated areas of the city, and whether the city may, under its police power, limit or restrict the use of private property for aesthetic reasons. This discussion and the decisions cited which touch these points have no application here, for the reason that this ordinance is a safety measure.
 

 For the reasons assigned, it is decreed that that portion of Section 2 of Ordinance 14194, as amended by Ordinance 14283, Commission Council Series, of the City of New Orleans, which requires junk yards of the character specified ■ in the ordinance to be enclosed on all sides with a fence built according to the specifications therein contained, is unconstitutional; the conviction and sentence of the defendant are set aside, and it is ordered that he be released.
 

 LAND, J., absent.