VERMONT SALVAGE CORPORATION *v.* VILLAGE OF ST. JOHNSBURY ET ALS.

May Term, 1943.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 5, 1943.

*Witters & Longmore, Conant & Parker* and *George L. Hunt* for the plaintiff.

*Arthur L. Graves* for the defendant.

*Alban J. Parker,* Attorney General, and *H. Stanwood Brooks,* State's Attorney, for the State.

JEFFORDS, J. This is a proceeding in chancery praying for a declaratory judgment under the provisions of the Uniform Declaratory Judgments Act, chapter 68 of the Public Laws. In addition to the village, the defendants are its trustees, the attorney general, the state's attorney of Caledonia county, the grand jurors of the town of St. Johnsbury and the chief of police of the town. The defendants filed an answer, incorporating therein a demurrer to the bill. The village then filed a cross bill to which the plaintiff answered, also incorporating a demurrer. The State of Vermont brought a bill of complaint "in the nature of a cross bill" naming this plaintiff as defendant which thereupon filed a motion to strike the cross bill. The chancellor after hearing had upon the two demurrers and the motion to strike ordered and decreed that the defendant's demurrer be overruled and the bill of complaint adjudged sufficient; that the cross bill of the village is sufficient except as to the last three paragraphs thereof; that the motion to strike the cross bill of the State be granted. Exceptions were allowed to all of the parties aggrieved by the various rulings and the

case passed to this Court before final judgment pursuant to Sec. 2072 of the Public Laws.

From the various pleadings here under consideration the facts material to the determination of the questions presented may be summarized as follows: By a provision in its charter (Par. b of sec. 4 of No. 179 of the Acts of 1927) the village was granted the authority to license certain things among which were junk businesses. Pursuant to this authority an ordinance of the village was passed (Sec. 6 of chapter 4, of the village ordinances) providing that licenses shall be required for the conduct of the business of junk dealers and should be granted under certain enumerated restrictions. This ordinance became effective on or about February 1, 1931. On November 19, 1941, the trustees of the village passed an amendment to this ordinance to become effective January 1, 1942. The ordinance as amended contains many restrictive provisions which are not here questioned. Such are for the requirement of a license; the definition of a junk dealer, of a junk yard and of a motor vehicle junk yard, and a statement as to what should constitute separate junk yards of any junk dealer. Other unchallenged provisions provide for the inspection by certain village officials of junk yards and motor vehicle junk yards and require that none of the articles commonly found in a junk yard shall be allowed to remain upon the land of the junk dealer for more than twenty-four hours unless within the buildings or properly fenced enclosures on the premises.

Sub. sec. d of the ordinance as amended which was par. c of the original ordinance is attacked. This paragraph is as follows:

"Every junk yard shall be enclosed by a substantial fence or wall of uniform height and construction at least six feet high, and in the case of fences of such construction that the area of the openings or holes in the texture of such fence shall not exceed the area of the solid or closed portions thereof, except that fences of steel or other metal of equal strength and durability of not less than No. twelve gauge wire and with a mesh having an area of not over four square inches may be employed. Such fences or walls shall at all times be maintained and kept in good repair. No person shall maintain or conduct a junk yard unless the same is enclosed by such fence or wall."

The plaintiff also challenges in its bill the provisions of the

ordinance as amended which relate to fines and penalties. These sub sections are the same as similar provisions in the original ordinance and as no reason is advanced in brief or argument by the plaintiff as to why these provisions are not reasonable and valid they are not considered.

Sub. sec. (g) of the original ordinance in amended form appears as sub. sec. (h) of the ordinance as amended. This provision is attacked because of the amended portion thereof which we set forth in italics. It is as follows:

"(h) Licenses for the conduct of the business of a junk dealer, junk yard, motor vehicle junk business or motor vehicle junk yard, shall be granted pursuant to this ordinance *and the laws of this state* to such applicants therefor as shall agree to comply with the requirements established by this ordinance, and who shall pay the established fees for such licenses, and whose junk yards, if any, are enclosed as provided in sub section (d) of this ordinance."

Sub. sec. (h) of the original ordinance was as follows:

"The license fee for a junk dealer maintaining a junk yard shall be twelve dollars for the first yard and six dollars for each additional junk yard. The license fee for other junk dealers not maintaining a junk yard shall be five dollars."

In the ordinance as amended the license fees are set forth in sub. sec. (i) which is challenged by the plaintiff. This sub section is as follows:

(i) "The license fee for each junk yard, motor vehicle junk business or motor vehicle junk yard shall be two hundred dollars. The license fee for a junk dealer not maintaining a junk yard shall be five dollars."

By sub. sec. (j) of the amended ordinance it is provided that:

"A motor vehicle junk yard shall not be located along side or in plain view of a public traveled highway, and no license shall be granted for the conduct or operation of a motor vehicle junk yard so located."

This sub. section appears for the first time in the amended ordinance and is especially challenged by the plaintiff.

It also appears from the various pleadings that the plaintiff and its predecessors in title have for about twenty-five years owned and operated junk yards in the village and at the time of the bringing of this bill the plaintiff owned and operated five junk yards at least

four of which came within the definition of "motor vehicle junk yards" and were located along side or in plain view of a public highway. Many other facts are alleged in the various pleadings which we do not deem necessary to the determination of the questions before us and consequently do not recite.

The plaintiff alleges, in substance, that the various sections of the amended ordinance which are challenged although passed under the guise of the police power are arbitrary and unreasonable and consequently violate various provisions of the constitution of this state and the federal constitution. It claims that because of the threatened enforcement of the amended ordinance its various property rights will be unlawfully invaded and asks for a declaration, (1) as to whether the enforcement of the ordinance as a whole or in its several parts would not violate its constitutional rights, (2) whether notwithstanding the amended ordinance it has the right to maintain its yards under the zoning ordinance of the village and (3) whether the right of the trustees to enact the amendment has not been repealed by secs. 3669 to 3673 of the Public Laws. The plaintiff also asks for an injunction restraining the various defendants from enforcing the amended ordinance.

The zoning ordinance above referred to is not set forth in the pleadings and counsel for the plaintiff admitted in argument that the question concerning it is not before us for consideration.

Although a declaration is asked as to whether the right to amend has been repealed by the general laws above referred to and this matter is discussed quite fully in the briefs of the parties there are no allegations in the bill of the plaintiff to warrant such declaration. It is also apparent that if the right has been so repealed the repeal only affects the power granted by the charter in so far as motor vehicle junk yards are concerned while the portions of the amended ordinance which are challenged are not in every instance confined to this particular kind of junk yard. Consequently if we should answer this question favorably to the plaintiff, we would still be obliged to consider the sections relating to junk yards generally in order to fully determine the issue presented by the plaintiff's bill. This issue stated briefly is whether the ordinance as amended is valid and enforceable. As this question can be answered fully by a determination of the constitutional objections raised we do not deem it necessary or advisable to consider the question of repeal.

Ground A of the defendant's demurrer presents the above issue for determination. It is therein alleged that the plaintiff has not stated in its bill any case which entitled it to relief. This allegation apparently forms the basis of the main argument in defendants' brief to the effect that the village under the police power conferred upon it by its charter has the right to regulate junk businesses and that the ordinance as amended is a proper regulatory measure enacted under that power.

In determining whether the amended ordinance is valid we are not required to discuss the sections not questioned, and inasmuch as the various sections are not inseparably connected so that even though some may be held to be invalid, the valid ones may be enforced, we may treat them separately. *Chicago* v. *Adelman,* 326 Ill. 58, 156 NE 791.

The plaintiff does not question that the village had authority under its charter to pass an ordinance regulating and licensing junk businesses. Nor could it well claim otherwise as it is well established that such businesses are the proper subject of statutory or ordinance regulation under the police power. *Village of St. Johnsbury* v. *Aron,* 103 Vt 22, 26, 151 A 650, 652, and cas. cit. "Every presumption is to be made in favor of the constitutionality of the ordinance, and it will not be declared unconstitutional without clear and irrefragable evidence that it infringes the paramount law. * * * Nevertheless the exercise of this (police) power must be reasonable and whether it is reasonable in the particular instance is a question ultimately for the court." *St. Johnsbury* v. *Aron, supra.*

With the above rules in mind, we will now proceed to determine whether any or all of the questioned sections of the ordinance as amended are invalid. We will consider them in their order as herein set forth.

The first of such sections is that containing the fencing requirement which the plaintiff says is a whimsical and arbitrary provision having no reasonable or substantial relation to public health, safety, morals, comfort or order. The plaintiff apparently does not question that a reasonable enclosure requirement would be permissible but it complains about the specific provisions as to construction. Assuming the right to enact this requirement, certainly some discretion was vested in the enacting body in the way

of specifying as to the construction of the enclosure. The plaintiff says that such a fence as required would serve no useful purpose. But one such purpose which comes to mind relates to the safety, morals and welfare of children. The required fence would prevent them from entering the yard and being exposed to the danger of playing with the articles commonly found in such a place. Moreover, if not enclosed, such articles would no doubt carry to a child the idea of free plunder to be carried away at his pleasure. An enclosure such as the one here prescribed would prevent the carrying out of such an innocent temptation and thus reduce, if not entirely prevent, actions against children resulting from the carrying away of such articles. It should also be noted, that as far as it appears, this provision was in effect for about ten years without either the plaintiff or its predecessors in title to the yards questioning its validity. In our opinion this section of the ordinance cannot clearly be said to be unreasonable and invalid for the reasons stated by the plaintiff.

The case of *New Orleans* v. *Southern Auto Wreckers,* 193 La 895, 192 So 523, cited by the plaintiff, is not in point. There it appears the property was, prior to the amendment of the ordinance in question, already enclosed by a substantial fence which served the purpose and intent of the ordinance and that the kind of fence required by the amendment did not in any way tend to carry out the purpose of the ordinance.

The provision in sub sec. (h) of the ordinance, as amended, which makes the granting of a license pursuant to the laws of the state as well as to the ordinance itself is attacked both in the plaintiff's bill and in its demurrer to the cross bill of the village and the same reasons are advanced in each instance. These reasons are that the amendment "contemplates the issuing of licenses containing terms, without any regulation as to what the terms are, which terms are uncontrolled by any standard or rule, and are subject to the whim and caprice of the licensing authority."

The general law to which the plaintiff refers in its brief in attacking this sub section is P. L. sec. 3671 which as far as here material reads as follows:

"A certificate of approval shall not be issued unless such legislative body shall, after such hearing, find that no unreasonable depreciation of surround-

ing property would ensue from the establishing or enlargement of such motor vehicle junk yard or business and that, in their judgment, the best interests of the community require the operation of such yard or business at the location designated. In awarding such certificate the legislative body shall take into account the proximity of schools, churches or other places of public gatherings, the sufficiency in number of other similar places in the vicinity and the suitability of the applicant to receive such certificate of approval. Each applicant shall pay the costs of publication and expenses of such hearing to the treasurer of the municipality."

From the above section the plaintiff takes the prerequisite finding to the granting of a certificate of approval that, "the best interests of the community require the operation of such yard or business at the location designated." It says that this provision is invalid as it vests in the issuing authority a discretion which is purely arbitrary because no rules are laid down for guidance of the trustees in determining what is or is not for the best interests of the community. The plaintiff apparently overlooks the next to the last sentence in this section of the statutes which does set forth such rules and standards. Whether the same are sufficient, or whether for any reason, other than the ones advanced, the questioned clause is invalid we are not called upon to determine. It is enough to hold that no invalidity in the questioned clause in the statute, nor in that part of sub sec. (h) of the ordinance which is attacked as being dependent upon such clause, is shown in the reasons given by the plaintiff. The manner in which we have disposed of this point makes unnecessary a discussion of *St. Johnsbury* v. *Aron,* 103 Vt 22, 151 A 650, and *Waterbury* v. *Melendy,* 109 Vt 441, 199 A 236, relied upon by the plaintiff.

We pass now to the question of the license fees. By subdivision (f) of sec. 3 of No. 179 of the Acts of 1927 the village was granted authority to adopt police regulations. Under this subdivision "a part of the authority granted to the village shall be deemed" to pass ordinances respecting the licensing of junk businesses above referred to. This authority was made subject to the general law. Although no express authority to charge a license fee was granted,

authority to so charge should, no doubt, be implied. See 38 Am Jur 36, sec. 347. Nor is the right to impose a reasonable fee as a prerequisite to the granting of the license questioned by the plaintiff which claims that the $200.00 fee for each yard is excessive and confiscatory.

It is apparent from a reading of the pertinent charter provisions that the right given to the village to license is simply given as an exercise of the police power. This being so, it must be exercised as a means of regulation only and cannot be used as a source of revenue. *State* v. *Bevins,* 70 Vt 574, 579, 41 A 655. Having merely the power to regulate, the village could not legally enact an ordinance which would have the effect of prohibiting within the village limits the conduct of the lawful and useful business of the plaintiff. 33 Am Jur 367, sec. 44. The sum levied cannot be excessive nor more than reasonably necessary to cover the cost of granting the license and of exercising proper police regulation. McQuillin, Municipal Corporations, 2nd Ed. sec. 1102, 33 Am Jur 366, sec. 43. In the present case it appears that the ordinance for about ten years required a license fee of twelve dollars for the first junk yard maintained by any dealer and six dollars for each additional yard. Then without any change in the ordinance, as amended, as to the supervision requirements which merely provide that the premises of all junk dealers shall be open to the inspection of certain village officers, the fee is greatly increased. It seems to us that the inescapable conclusion to be drawn from this increase is either that it was made to provide revenue for the village or to prohibit the maintenance of junk yards therein. Inasmuch as both of these purposes are beyond the power of the village to carry out we hold that the license fees in the ordinance as amended are invalid. We appreciate the fact that the unreasonableness of the fee must be clearly shown, but to our minds the situation here is similar to that in *State* v. *Bevins, supra,* where a fee of twenty five dollars for a peddler's license was held to be so clearly in excess of the reasonable cost and expense of granting the license as to be deemed invalid as a matter of law.

The case of *State* v. *Harrington,* 68 Vt 622, 35 A 515, 34 LRA 100, relied upon by the defendants is not in point. There a statute was under consideration and the Court at page 632 of 68 Vt, 35 A 515, indicates that the courts are more inclined to hold

license fees excessive and ordinances unconstitutional and void for this reason than they are to make such holdings in regard to statutes.

We will now consider the location section of the ordinance. Police power signifies the governmental power of conserving and safeguarding the public safety, health, morals and welfare. *State v. Quattropani,* 99 Vt 360, 363, 133 A 352; *Carty's Admr.* v. *Winooski,* 78 Vt 104, 108, 62 A 45, 2 LRANS 95, 6 Ann Cas 436. The ordinance having been passed pursuant to this power there must be an obvious and real connection between the section of the ordinance relating to the location of motor vehicle junk yards and one or more of the purposes for the application of the police power. The question is, then, does the prohibition of the location of such junk yards along side or in plain view of a public traveled highway have any such connection.

It is very apparent that one purpose of this restriction is to remove from the view of those travelling along the highways of the village this class of junk yards even though they are fenced, as required by another section of the ordinance. It is well settled, however, that the use of a person's property cannot be limited or restricted under the guise of the police power where the exercise of such power would be warranted solely on aesthetic considerations. 11 Am Jur 1038, sec. 280 and cases cited in note 18. We have heretofore recognized this to be the law. In *Woodstock Burying Ground Association* v. *Hager,* 68 Vt 488, at page 489, 35 A 431, at page 432, Judge Taft in delivering the opinion of the Court says:

> "The law will not declare a thing a nuisance because it is unsightly and disfigured, nor because it is unpleasant to the eye and a violation of the rules of propriety and good taste, nor because the property of another is rendered less valuable. No fanciful notions are recognized. The law does not cater to men's tastes, nor consult their convenience merely. It guards and upholds their material rights and shields them from unwarrantable invasion."

We are aware, as stated in the section from American Jurisprudence just above referred to, that it is indicated in some opin-

ions and text books that the law on this subject is undergoing development and perhaps cannot be said to be conclusively settled as to the extent of the police power. Our rule, however, is in accord with the vast majority of the cases on this subject and we are not disposed to change it.

It is held, however, that even though aesthetic considerations alone may not warrant police regulation, they may be taken into account where other elements are present to justify regulations, and that the fact that such considerations enter into the reasons for the passage of an ordinance will not invalidate it where other elements within the scope of the police power are present. 11 Am Jur 1044, sec. 284 and cases cited in note 3. The various reasons given for the regulation of junk yards are that they furnish a convenient and ready market for the disposition of stolen goods and are apt to garner inflammable material and gather disease laden substances. *Mansback Scrap Iron Co.* v. *Ashland,* 235 Ky 265, 30 SW2d 968. See also cases cited in Annotations in 30 ALR 1427 and 88 ALR 970. We have heretofore suggested the welfare of children as a reason for regulation and no doubt other reasons may be found which properly call for regulation under the proper exercise of the police power. But the restriction as to location has no connection with, or bearing on, the reasons already given or that can be thought of for the regulation of such business. Any of the dangers or evils attendant upon the conduct of a motor vehicle junk yard would exist and some, such as places for the receiving of stolen goods, would doubtless flourish, in places outside of the plain view of a public traveled highway.

The case of *State* v. *Speyer,* 67 Vt 502, 32 A 476, 29 LRA 573, 48 Am St Rep 832, is much in point. There the State Board of Health was given authority by statute to promulgate regulations for the preservation of the public health. Acting under this authority the Board issued a state wide regulation that no pig pen should be built or maintained within one hundred feet of any well or spring of water used for drinking purposes, nor within one hundred feet of any street or inhabited house. This regulation was held to be unconstitutional and void because it was too broad and sweeping to be upheld by any necessity of protecting the public health. The Court held that it reached beyond the scope of necessary protection and prevention into the domain of restraint of law-

ful business and use of property and could not be regarded as a reasonable and legitimate exercise of the power attempted to be conferred by the statutory enactments.

Applying the principles of the above case, we hold that the section of the ordinance in question is so broad and sweeping in its scope that it cannot be regarded as a reasonable and legitimate exercise of the power granted the village by its charter. The section is, in effect, a prohibitory rather than a regulatory measure and is unconstitutional and void.

We have examined carefully the many cases cited by the village on this point. None of them have held an enactment valid which was as broad as the section in question. All of the regulations questioned in such cases were found to have some direct connection with one or more of the legitimate purposes for the exercise of the police power.

We now turn to other grounds of the demurrer which while not directly touching the main issue assert reasons why the bill should not be sustained. In ground E it is alleged, in substance, that even though the ordinance is invalid the plaintiff has adequate defenses in law against prosecution under it. The answer to this claim is found in the Uniform Declaratory Judgments Act. In a section of the Act (P. L. 1590) it is stated that a person whose rights, status or other legal relations are affected by a statute or municipal ordinance may have determined any question of construction or validity arising under the statute or ordinance and obtain a declaration as to his rights, status or legal relations thereunder. The rights of this plaintiff are affected by the ordinance as amended. Consequently it has a right to the declaration sought and need not wait to become a respondent in a criminal action in order to ascertain the validity of the ordinance. It is apparent that one purpose of the Act is to give persons situated as is this plaintiff relief from uncertainty and thus avoid the waiting for expected prosecution under the ordinance in question. P. L. sec. 1600. See also Borchard, Declaratory Judgments 2d ed p. 966 et. seq. and also a treatise by the same author entitled "Challenging 'Penal' Statutes by Declaratory Action" appearing in the Yale Law Journal, Vol. 52, p. 445 at 461.

The allegations in ground F of the demurrer are to the effect that as admittedly the plaintiff is maintaining motor vehicle junk

yards along side or in plain view of a public highway in violation of P. L. 3673 it ought not to receive aid from a court of chancery as it does not come into court with clean hands. P. L. sec. 3673 reads as follows:

> "A motor vehicle junk yard shall not be located along side or in plain view of a public traveled highway, and any junk yard so located is hereby declared to be a nuisance and the same may be abated on complaint of any prosecuting officer."

The plaintiff claims that this section is unconstitutional and void and consequently furnishes no valid basis for the application of the familiar maxim.

It is apparent that the wording of this section is similar to that of sub sec. j of the ordinance, as amended, which we have already discussed and held to be invalid. Much that we have said in regard to that section of the ordinance applies here. Both sections are, in effect, prohibitory and the need for a separate treatment of the statutory section arises from the fact that the Legislature may in proper circumstances, declare a thing to be an abatable nuisance and thus prohibit its maintenance while, as we have seen, the village was merely given regulatory power over junk businesses.

██ ██ . The State, in the exercise of its police power, has authority to prevent or abate nuisances, and under this power, and subject to constitutional limitations, the legislature has authority to declare what shall be deemed nuisances and to provide for their suppression. 39 Am Jur 292, sec. 12. But this power cannot be made a cloak for confiscation or for withdrawing property from the protection of the law. The legislature has no power arbitrarily or capriciously to declare any or every act a nuisance, and cannot enlarge its power over property or pursuits by declaring them nuisances; nor can it by mere declaration make that a nuisance which is not so in fact and thereby destroy or prevent a lawful use of property. The action of the legislature in this regard is subject to review by the courts. Although much must be left to the discretion of the legislature it usurps judicial power when it declares an act a nuisance when it is not. 39 Am Jur 294, sec. 13.

██ Maintaining and operating a junk yard whether classed as a motor vehicle junk yard, or otherwise, is a legitimate and use-

ful business and consequently not a nuisance *per se*. *Weadock* v. *Judge of Recorder's Court,* 156 Mich 376, 120 NW 991, 132 Am St Rep 527, 16 Ann Cas 720; *Perry Mount Park Cem. Assn.* v. *Metzel,* 274 Mich. 97, 264 NW 303; *Warren* v. *Raymond,* 291 Mich 426, 289 NW 201; *St. Louis* v. *Evraiff,* 301 Mo 231, 256 SW 489; *Stroll* v. *State,* 95 Tex Cr R 611, 255 SW 620, 30 ALR 1424; *Parkersburg Builders Material Co.* v. *Barrack,* 118 W Va 608, 191 SE 369, 192 SE 291, 110 ALR 1454; 39 Am Jur 350, sec. 70. This fact is recognized in *St. Johnsbury* v. *Aron,* 103 Vt 22 at page 28, 151 A 650. Although a motor vehicle junk yard was recognized not to be a nuisance *per se* it was held, in *State* v. *Kievman,* 116 Conn 458, 165 A 601 at page 605, 88 ALR 962, that while in some localities it might or might not be so objectionable as to require suppression or regulation, in others it would doubtless constitute a nuisance. But in that case, relied upon by each of the parties here, the defendant's yard was not located in a restricted district or adjoining a trunk line highway, so the validity of certain provisions in the Connecticut statute somewhat similar in effect, at least, to the one here under consideration were not discussed and consequently that case is not particularly helpful in determining the question before us.

As in the case of the similar section of the ordinance, it is apparent that a primary purpose of this section of the statutes is based on aesthetic considerations. Although the legislature should be permitted to exercise discretion to a certain extent in declaring what things shall be nuisances, this discretion is not unlimited and must be confined within constitutional limits. It is well settled that the mere fact that a thing is unsightly and thus offends the aesthetic sense furnishes no valid ground for a declaration by the legislature that it is a nuisance. 39 Am Jur 310, sec. 29. Apparently the same rule applies in this respect as to the power of a municipality to regulate for this reason alone. Consequently what we have said on that subject in regard to the similar section of the ordinance applies equally here. The restrictions as to location in the statute have no more obvious or real connection with any of the proper reasons under the police power for the prohibition of this business as a nuisance than have similar restrictions in the ordinance for the valid regulation of the business. The principles and holdings in *State* v. *Speyer,* 67 Vt 502, 32 A 476, 29 ALR

573, 48 Am St Rep 832, heretofore set forth, apply equally here. This statutory section is too broad and sweeping in its scope to be considered a reasonable exercise of the police power. Its effect would be to virtually prohibit the conduct of this business within the state as it is extremely unlikely that any one would operate a motor vehicle junk yard at such a distance from a public travelled highway as not to be in plain view of the same. Although the sight of these yards may be objectionable to most, if not all of us, their need for the welfare of the state and nation has been demonstrated in the recent drives for scrap material. They have their place in the economic structure of the state and, though subject to reasonable regulation, should not be removed therefrom. Consequently for the reasons stated, we are constrained to, and do hold, that section 3673 of the Public Laws is unconstitutional and invalid and that its admitted violation by the plaintiff constitutes· no bar to the relief sought in its bill.

We have examined the cases cited by the defendants on this point and none of them have to do with enactments similar to the above section. All of them, except possibly *Levine* v. *Board of Adjustment,* 125 Conn 478, 7 A2d 222, are readily distinguishable. If the effect to be given to the latter case is as broad as appears from certain statements in the opinion we are not inclined to follow it.

Ground G of the demurrer contains an allegation to the effect that it does not appear that the plaintiff has ever applied for or had a certificate of approval for the location of its motor vehicle junk yards as required by secs. 3669-3672 of the Public Laws. By P. L. 3670 it is provided that:

> "A person shall not establish or enlarge a motor vehicle junk yard or business unless he shall first obtain a certificate of approval of the location to be used therefor from the legislative body wherein such location shall be situated."

Then follows sec. 3671 hereinbefore set forth in part. It appears from the allegations in the various pleadings that one of plaintiff's motor vehicle junk yards has been established since the enactment of these statutory provisions and it is to be inferred that the others were in operation prior thereto. Thus it appears

that the requirement of the certificate applies to the one yard. But the result is the same if it be assumed that it applies to the others. It is apparent because of the location prohibition contained in P. L. sec. 3673 that such certificate, if required, would not have been granted for any of the plaintiff's motor vehicle junk yards. The plaintiff was not required to perform the vain act of applying for a certificate before bringing this bill attacking the validity of the ordinance as amended. *Village of St. Johnsbury* v. *Aron,* 103 Vt 22, 25, 151 A 650; *Euclid, Ohio* v. *Ambler Realty Co.,* 272 US 365, 47 S Ct 114, 71 L Ed 303, 54 ALR 1016.

Ground H of the demurrer consists of an allegation to the effect that certain allegations in the bill relating to the extent of the plaintiff's yards are immaterial. This ground is not sufficiently briefed to warrant consideration as the statements in the brief merely restate in somewhat different form the allegations in the demurrer.

Ground I of the demurrer is based on the claim of misjoinder of defendants. The pertinent section of the Uniform Act (P. L. 1599) reads as follows:

> "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard."

The defendants do not question that the trustees were properly joined with the village as defendants but assert that the other defendants were not proper parties, and that the bill should be dismissed as to them. Our search revealed no cases to aid us in determining this question. Although the statute makes it mandatory in a case such as the present one that the village be made a party it would not seem that a reasonable construction of the statute would require a holding that the municipality could be the only

proper party defendant. The defendants seem to agree to this by their implied admission that the trustees were properly joined. It is expressly provided that in such cases as the present the attorney general shall be served with a copy of the proceedings and entitled to be heard. In the present case this officer not only embraced this opportunity by joining in the demurrer but with the state's attorney for the county brought a cross bill in the name of the State of Vermont. It seems to us that by those acts these officers evidenced an interest in the outcome of the proceedings which would justify the chancellor in concluding that they were proper parties thereto and that, in any event, their bringing of the cross bill amounted to a waiver of any claim in this respect.

The status of the grand jurors and chief of police of the town presents a more difficult question. It should be noted that the prayer for a declaration is accompanied by one for an injunction. This is a common and accepted method of procedure. Borchard, *supra,* 432 et. seq. To these officers might very well fall the instigation and the carrying out of any prosecution for violations of the ordinance. They would have more interest in the outcome of this proceeding than would persons generally and their right to so prosecute would be affected by the declaration or injunction if granted or refused. Consequently as the case stood before the chancellor we believe there was no error on his part in holding, in effect, that these last named officers were proper parties. The defendants say that the allegations in the bill respecting the enforcement of the ordinance by the various officers who are alleged to be improperly joined are insufficient but we think they are definite enough to satisfy their purpose.

It would seem, however, that in the present case it is not very material whether we should hold with or against the defendants on this claim of misjoinder. The defendants, as before noted, do not question that the village and its trustees were proper parties. Consequently jurisdiction was had for a declaration. The questions raised by the defendants go largely to the matter of injunction and are eliminated by our disposition of that prayer for relief. Moreover, if we agreed with the defendants, the action would not be defeated as we would only order its dismissal as to the grand jurors and chief of police under the provisions of our Practice Act, P. L. 1581. The situation here is entirely different from that

presented in *Manchester* v. *Townshend,* 109 Vt 65, 192 A 22, 110 ALR 811, relied upon by the defendants.

The remaining grounds of the demurrer relating only to the question of injunctive relief become immaterial because of the manner of our disposal of that subject.

Our conclusion is, therefore, that no error has been made to appear in the chancellor's ruling as to the defendants' demurrer to the plaintiff's bill.

The first five paragraphs of the cross bill of the village refer to the original bill of complaint, set forth the ordinances upon which the cross bill is based, and describe the various yards of the plaintiff which are referred to in the cross bill as motor vehicle junk yards. In paragraph 6 it is alleged that the plaintiff has operated these yards since October 14, 1941, without a license and without applying for one and in violation of the ordinances and contrary to the terms and provisions thereof. Paragraph 7 contains an allegation that the yards are not fenced as required by the ordinances. In paragraph 8 it is alleged that all of the yards are located alongside or in plain view of public traveled highways in the village. Paragraph 9 contains an allegation that one of the yards was established subsequent to October 7th, 1939.

The plaintiff's demurrer to the cross bill in so far as the above paragraphs are concerned particularly challenged the allegations in paragraphs 6, 7 and 8 on the ground that they were immaterial because they have for their basis an unconstitutional ordinance. One ground of the demurrer presented the question of the repeal by general statutes of the charter authority of the village to enforce the ordinances in question.

As before noted, the chancellor overruled the plaintiff's demurrer to that part of the cross bill containing the above nine paragraphs. The constitutional questions presented by paragraphs 6, 7 and 8 of the cross bill are, in general, the same as those presented by the bill of the plaintiff which we have already discussed and disposed of.

Inasmuch as one of the challenged "terms and provisions" of the ordinance as amended, i.e. the fencing requirement, is valid the allegations in paragraphs 6 were material in part, at least, and consequently no error is made to appear in the chancellor's ruling as to this paragraph. Our holdings sustain his ruling as to para-

graph 7. Paragraph 8 is immaterial and the ruling in respect to it must be reversed. No claim of error is made in plaintiff's brief in regard to paragraph 9 which must be read in connection with the paragraph following it in the cross bill.

Paragraph 10 of the cross bill alleges that neither the plaintiff nor its predecessors in title have applied for, or obtained, a certificate of approval of the location of the yards from the village trustees. Paragraph 11 contains many allegations to the effect that the yards are in fact public nuisances and not maintained in accordance with certain ordinance requirements. Paragraph 12 contains allegations for the basis of an injunction.

As before stated, the chancellor sustained the demurrer in respect to the last mentioned paragraphs in the cross bill. No question is made by either side as to the ruling insofar as it relates to paragraph 12. That the ruling in respect to paragraph 10 was correct follows from our holding that the plaintiff was not required to do the vain act of applying for a certificate of approval which would not have been granted because of the location prohibition and the further holding that such prohibition is invalid.

Paragraph 11, although containing allegations that the ordinance requirements of fencing, location and the keeping of material within the yards are being violated by the plaintiff, contains numerous other allegations tending to show that the yards as maintained by the plaintiff are nuisances in fact. The defendants construe this paragraph as one alleging the maintenance of nuisances in fact. We will assume that the chancellor adopted this construction and so do we.

The grounds of the demurrer to this paragraph are numerous but only the one to the effect that it is not germane in any way to the allegations and relief prayed for in the plaintiff's original bill need be considered. The only question raised by the plaintiff's bill was as to the validity of the ordinance as amended. Whether in fact the yards were being conducted in such a manner as to render them public nuisances was entirely a different matter and not in any way dependent upon or connected with the question presented by the main bill.

The proper function of a cross bill is well set forth in *Van Dyke* v. *Cole,* 81 Vt 379 at page 392, 70 A 593, 1103, at page 596, where it is stated:

"The cross bill is a proceeding to procure a complete determination of a matter already in litigation, and the new facts introduced by it are such, and only such, as are necessary to have before the court in the decision of the question raised in the original suit, to enable it to do full and complete justice to all the parties before it in respect to the cause of action on which the orators rest their right to aid or relief."

See also *Bennington* v. *Hawks,* 100 Vt 37 at page 39, 134 A 638, 50 ALR 983.

There was no error in sustaining the demurrer to paragraphs 10, 11 and 12 of the cross bill of the village.

The bill of complaint of the State of Vermont "in the nature of a cross bill" asked for a declaration that the plaintiff's yards are nuisances and for a restraining order. Its material allegations are to the effect that the yards, described as motor vehicle junk yards, are located alongside or in plain view of public highways in violation of the statutory prohibition and that no certificate of approval has been obtained for their location. There is also a paragraph with allegations very similar to those in paragraph 11 of the cross bill of the village. The purport of the above allegations is that the yards are nuisances in law and in fact.

Our previous holdings make it apparent that there was no error in the chancellor's ruling on the motion to strike the cross bill of the State.

We have not touched upon any of the questions pertaining only to the prayer of the plaintiff for an injunction, nor do we propose to do so, as we do not deem it necessary. The declaratory judgment is the vital element of relief and the injunction serves as a mere implementation, often unnecessary, of the adjudication. Borchard, *supra,* 438. An injunction in this case against the village or the public officers named as defendants would be a superfluous command for we are certain that, when the law is settled, it will be obeyed by these responsible public officials. It is not here necessary for one branch of the government to restrain another in order to obtain obedience for declared law. For authority for these statements see *Socony-Vacuum Oil Co.,* v. *City of N. Y.,* 247 App Div 163, 287 NYS 288, 272 NY 668, 5 NE2d 385; *Tirrell* v.

*Johnston,* 86 NH 530, 171 A 641; Borchard, *supra,* pps. 438 and 967.

As before noted, the only prayer for a declaration which we have considered relates to the validity, in whole or in part, of the ordinance relating to junk businesses as amended. Our answer to this request is that of the parts of this ordinance which are questioned, being the only parts considered by us, sub-sections (i) and (j) of section 6 of chapter 4 of the ordinances of the village of St. Johnsbury are invalid, null and void. The remaining questioned sub-sections, i.e. (d) and (h), as far as has been made here to appear, are valid and enforceable.

*Cause remanded with direction that a decree be entered declaring sub-sections (i) and (j) of section 6 of chapter 4 of the ordinances of the village of St. Johnsbury to be invalid, null and void. The order and decree of the chancellor overruling the defendants' demurrer to the plaintiff's bill of complaint is affirmed. The order and decree adjudging paragraphs ten, eleven and twelve of the cross bill of the village of St. Johnsbury to be insufficient is also affirmed. The order and decree adjudging the remainder of said cross bill to be sufficient is affirmed except as to paragraph eight of said cross bill as to which it is reversed. The order and decree granting the motion to strike the cross bill of the State of Vermont is affirmed. The cause is also remanded for any further proceedings which may properly be had, not inconsistent with the views herein expressed. Let neither party recover costs in this court.*