## Town of Sandgate, et al. v. Raymond Colehamer

[589 A.2d 1205]

No. 88-340

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed November 30, 1990

Motion for Reargument Denied February 6, 1991

*Witten, Saltonstall & Woolmington, P.C.*, Bennington, for Plaintiffs-Appellees.

*Michael Rose*, St. Albans, for Defendant-Appellant.

**Dooley, J.** Defendant, Raymond Colehamer, appeals an injunction, dated June 2, 1988, granted pursuant to 24 V.S.A. §§ 2241–2283, by the Bennington Superior Court in favor of plaintiffs, the Town of Sandgate and its selectmen and the Sandgate Zoning Board of Adjustment. The injunction was issued in a suit in which plaintiffs sought the removal of junk cars and a boat from the property occupied by defendant and owned by Sonia Siwik, who is also joined as a defendant. We reverse and remand.

Plaintiffs appeal the court's February 25, 1986 decision denying them an injunction for failure to set forth sufficient facts supporting the Town's decision to amend its zoning ordinance. We reverse and remand that order also. The effect of our action is to authorize an injunction similar to that issued by the trial court but based on the Sandgate Zoning Ordinance and not on the state junkyard statute.

Defendant resides in the mountainous region of Sandgate, Vermont, where, according to the Town Plan, "there is virtually no commercial use of land . . . other than a few home occupations." The log cabin in which he resides and the surrounding land is actually owned by defendant's former girl friend, Sonia

Siwik,[1] but she moved out some time ago to live elsewhere. Defendant currently makes the mortgage payments on the cabin.

Since 1968, when defendant moved onto the property, he has accumulated "a collection of kitchen appliances, lawn mowers, automobiles, used wood, old tires, gas cans, steel drums, cable reels and a small yacht," which are left outside around the land. Among the items strewn about the land are twenty-one unregistered vehicles and a boat. The trial court found that the property was not used as a junkyard, since there is no commercial activity. A neighbor testified that defendant's residence is an eyesore which devalues the property of its neighbors in the area.

Apparently, in response to the situation on the property on which defendant resided, the Town amended its zoning ordinance in 1985 to prohibit the storage of junk cars on property within the Town. An amendment was adopted that made it illegal to have "more than one inoperable motor vehicle . . . stored on any lot for a period in excess of thirty days unless within a building or totally screened from view from off the premises." The amendment required existing uses to be brought into compliance within ninety days of the effective date of the amendment. On July 16, 1985 the Town zoning administrator issued citations to Sonia Siwik and Raymond Colehamer for violation of the newly amended ordinance, giving them thirty days in which to bring the property into compliance with the amendment. On August 2, 1985, defendant appealed to the zoning board of adjustment. Sonia Siwik did not appeal. Although the Board found the appeal to be untimely, it held a hearing on September 30, 1985, and defendant failed to appear. The Board found defendant in violation of the ordinance and ordered him to remove the junk vehicles and the boat, within thirty days of receipt of the decision.

At this point, the action shifted to Bennington Superior Court to which defendant appealed the decision of the Sandgate Zoning Board. Again Sonia Siwik did not join in the appeal. Shortly thereafter, plaintiffs brought an action against defendant and

---

[1] Although Sonia Siwik is also a defendant, she has not appeared and, in fact, testified for the plaintiffs in the injunction hearing. To avoid confusion, we have referred to her by name in this opinion. We have occasionally referred to both Raymond Colehamer and Sonia Siwik as defendants.

Sonia Siwik seeking an injunction to require defendant to remove the junk vehicles, along with civil fines. The actions were combined and heard in early 1986. Sonia Siwik never answered plaintiffs' complaint and testified at the hearing that she wanted the court to order the removal of the cars. The court denied plaintiffs' requests for relief and reversed the decision of the zoning board, concluding that the junk car amendment to the zoning ordinance was invalid because it was not supported by the Town plan.

An attempted appeal to this Court failed because we found that there was no final judgment since the court had not resolved plaintiffs' claim that they were entitled to relief under the state junkyard statute, 24 V.S.A. §§ 2241–2283, and the common law of nuisance. The trial court then decided that plaintiffs were entitled to relief under the statute. It found that defendant had maintained junk motor vehicles within view of the main-traveled public highway in violation of 24 V.S.A. §§ 2242(2) and 2271. Accordingly, the court issued an injunction requiring defendants to remove the boat and all unregistered motor vehicles within the view of the traveled way of any public highway by 5 p.m. on July 5, 1988. Further, defendants were prohibited from placing any other junk motor vehicles on the property within view of the main traveled way of any public highway. If defendants failed to comply with the order, plaintiffs were authorized to remove the junk motor vehicles and dispose of them to pay for their removal costs. Since the court granted plaintiffs relief under the state junkyard statute, it did not reach plaintiffs' common-law nuisance claim. Both defendant[2] and plaintiffs[3] appeal the trial court's decision.

## I.

We consider first plaintiffs' appeal from the 1986 decision that the provisions of the ordinance with respect to junk vehicles are invalid. Plaintiffs assert that the court's decision is erroneous because: (1) defendant's appeal should have been

[2] Defendant appealed the Bennington Superior Court's June 3, 1988, decision granting plaintiffs' request for injunctive relief. Defendant's request for a stay of the injunction was granted until the appeal is decided by this Court.

[3] Plaintiffs cross-appealed the trial court's February 25, 1986 ruling that the amendment to the zoning ordinance is unenforceable.

dismissed because he is not the owner of the land and does not have standing to contest the action of the zoning board; and (2) the ordinance amendments are valid, and plaintiffs were entitled to an injunction under them.

There are actually two standing issues in this case, one in each of the combined cases. The first issue is whether defendant has standing to pursue an appeal from the zoning board to the superior court. Under 24 V.S.A. § 4471, an appeal may be taken only by an "interested person." This term is defined in 24 V.S.A. § 4464(b)(1) to include:

> A person owning title to property affected by a bylaw who alleges that such regulation imposes on such property unreasonable or inappropriate restrictions of present or potential use under the particular circumstances of the case.

There is no other part of the definition that could apply to defendant's situation; if defendant does not fit within § 4464(b)(1), he lacks standing.

This Court construed § 4464(b)(1) in *Mad River Valley Enterprises, Inc. v. Town of Warren Board of Adjustment*, 146 Vt. 126, 499 A.2d 759 (1985). There, a developer sought zoning approval to construct a condominium hotel, but the evidence showed that the developer's interest in the property would be obtained in the future. This Court held that the developer's "shared interest" with the title-owners in the "common goal" of the development of the property was insufficient to confer standing under the wording of the statute. *Id.* at 129, 499 A.2d at 761. Defendant seeks to avoid the application of *Mad River Valley Enterprises* by arguing that the term "title" in the statute doesn't mean record title and the term "property" can include personal property, here the cars and the boat, as well as real property.

We cannot interpret the statute as broadly as defendant argues. As we emphasized recently, we must interpret a zoning statute in light of the whole statutory scheme, "'the subject matter, its effects and consequences, and the reason and spirit of the law.'" *Nash v. Warren Zoning Board of Adjustment*, 153 Vt. 108, 112, 569 A.2d 447, 450 (1989) (quoting *In re R.S. Audley, Inc.*, 151 Vt. 513, 517, 562 A.2d 1046, 1049 (1989)).

Our objective is to give effect to the intent of the Legislature. In the context of the overall zoning statutes, the term "property" clearly refers to the real property that is regulated by zoning. See, e.g., 24 V.S.A. § 4401(b)(1) (zoning regulations relate to "land development"). While something less than record title to land may be sufficient to confer standing, defendant has failed to show that he has any title at all.[4] For the above reason, defendant lacked standing to appeal to the superior court, and his appeal should have been dismissed.

It is not clear, however, that the reversal of defendant's appeal to the superior court would have any impact on the trial court's order. As noted above, the trial court was dealing with two proceedings, and it denied plaintiffs relief because it found the zoning provision under which they were proceeding to be invalid. Presumably, that ruling would stand despite the dismissal of defendant's appeal. Thus, we must address whether a person in defendant's position can defend against a zoning enforcement action on the basis that the applicable zoning requirement is invalid.

To resolve this question, we can first treat defendant as if he were the record title owner of the property. Even in this posture, defendant must confront the appeal statute, 24 V.S.A. § 4472, and its exclusivity-of-remedy provision. The appeal statute provides, in relevant part:

> [T]he exclusive remedy of an interested person with respect to any decision or act taken, or any failure to act, under this chapter or with respect to any one or more of the provisions of any plan or bylaw shall be the appeal to the board of adjustment under section 4464 of this title, and the

---

[4] The *Mad River Valley Enterprises* decision suggests that equitable title may be sufficient to meet the standing requirement. The developer in that case claimed title under an assignment of a purchase and sale agreement with the record titleholder. The Court relied on the trial court's finding that the assignment did not exist, implying that the interest created by the purchase and sales agreement would have been sufficient. 146 Vt. at 128–29, 499 A.2d at 760-61.

Defendant appears to be arguing that he has equitable title based on possession plus his ongoing mortgage payments. We cannot conclude that these two facts alone are sufficient to create equitable title. At best, they might create some kind of equitable mortgage interest. See *Tromblay v. Dacres*, 135 Vt. 335, 339, 376 A.2d 753, 756 (1977).

appeal to a superior court from an adverse decision upon such appeal under section 4471 of this title. . . .

24 V.S.A. § 4472(a). The exclusivity-of-remedy provision, § 4472(d), adds:

Upon the failure of any interested person to appeal to a board of adjustment under section 4464 of this title, or to appeal to a superior court under section 4471 of this title, all interested persons affected shall be bound by such decision or act of such officer, such provisions, or such decisions of the board, as the case may be, and shall not thereafter contest, either directly or indirectly, such decision or act, such provision, or such decision of the board in any proceeding, including, without limitation, any proceeding brought to enforce this chapter.

There is an exception to the exhaustion requirement in the zoning board for challenges to the constitutionality of a zoning ordinance. 24 V.S.A. § 4472(b). See *Hinsdale v. Village of Essex Junction*, 153 Vt. 618, 626, 572 A.2d 925, 929 (1990).

We have strictly enforced the exclusivity-of-remedy provision consistent with the evident legislative intent to require all zoning contests to go through the administrative review process in a timely fashion. See, e.g., *Hinsdale*, 153 Vt. at 627, 572 A.2d at 929; *Levy v. Town of St. Albans Zoning Board of Adjustment*, 152 Vt. 139, 142, 564 A.2d 1361, 1363 (1989) (exclusivity-of-remedy provision applies even where plaintiffs allege that a zoning board decision was "void ab initio"). We have never addressed directly whether the provision forecloses a nonconstitutional attack on the validity of a zoning ordinance as a defense to an enforcement action brought by the town pursuant to 24 V.S.A. §§ 4444, 4445. A number of our decisions involve such attacks although the jurisdictional question was evidently not raised. See, e.g., *Town of Westford v. Kilburn*, 131 Vt. 120, 121, 300 A.2d 523, 524 (1973); *Town of Mendon v. Ezzo*, 129 Vt. 351, 353, 278 A.2d 726, 727–28 (1971). Without addressing the statute, the Court did consider the res judicata effect of earlier zoning board action on an attack on the validity of the zoning ordinance in *Town of Waterford v. Pike Industries*, 135 Vt. 193, 194–95, 373 A.2d 528, 529–30 (1977).

In *Pike Industries*, the landowner had sought unsuccessfully to obtain a variance from the requirements of the zoning ordi-

nance, and the town argued that the unsuccessful variance proceeding precluded the landowner from defending against an enforcement action with an attack on the validity of the ordinance. The Court held that the earlier proceeding was not res judicata, relying heavily on the fact that the landowner had no opportunity in the zoning board variance proceeding to make a factual record on the validity of the zoning ordinance and the superior court on review was limited to the record made in the zoning board. *Id.* at 195, 373 A.2d at 530. The Court noted, however, that the statute had been amended after the landowner's appeal to allow for de novo consideration in superior court, suggesting that a de novo proceeding in superior court might have res judicata effect. This reading of *Pike Industries* is reinforced by *Galanes v. Town of Brattleboro*, 136 Vt. 235, 237, 388 A.2d 406, 408 (1978), where the landowners attacked the ordinance in a separate proceeding after failing to appeal from the denial of a variance. The Court allowed the proceeding because it was a constitutional attack, stating that "unless the action . . . violated a constitutional right of the plaintiffs put forward in the proceedings, the amendments [to the zoning ordinance] cannot now be attacked in this litigation." *Id.*[5]

By its terms, § 4472(d) clearly applies to defenses raised in enforcement proceedings and clearly applies to attacks on the validity of zoning provisions unless they raise constitutional issues. Further, the statutes broadly give a right of appeal of "any decision or act taken, by the administrative officer." 24 V.S.A. § 4464(a). In this case, the zoning administrator sent defendant a letter stating that he had determined that defendant was not complying with the ordinance, giving defendant thirty days to comply and informing defendant of his right to appeal to the zoning board from "my decision." He sent an identical letter to Sonia Siwik. We hold that defendant's exclu-

---

[5] We recognize that a broad reading of *Pike Industries* is undercut somewhat by *Town of Shelburne v. Kaelin*, 136 Vt. 248, 250–51, 388 A.2d 398, 399–400 (1978), where we allowed a landowner to defend a zoning enforcement action on the basis that the usage in question was a preexisting nonconforming use, although the landowner failed to raise the issue in an earlier variance proceeding. It is not clear in *Kaelin*, however, that the zoning administrator had ever ruled on the nonconforming use question. Thus, it is possible that the landowner never had a decision from which he could appeal.

sive remedy to challenge the validity of the zoning amendment dealing with junk cars was in the appeal process from the zoning administrator's decision to cite him for violation of the ordinance. He can not raise it in this enforcement action even if he has no standing in the appeal. The Legislature can make the judgment that it will not allow possessors of land to challenge the validity of zoning restrictions imposed on that land without the active involvement of the owner of the land.

Even if defendant had standing, we cannot accept his challenge to the validity of the amendment covering junk cars. The trial court held that it was inadequately supported by the Sandgate town plan, in part because it concluded that the restrictions were justified solely by aesthetic considerations.

In a 1943 decision, *Vermont Salvage Corp. v. Village of St. Johnsbury*, 113 Vt. 341, 351, 34 A.2d 188, 194–95 (1943), this Court held that land use regulation justified solely on aesthetic considerations is unconstitutional. The Court went on to hold that operation of a junkyard is a legitimate and useful business that cannot be declared a nuisance and restricted solely because it is unsightly. *Id.* at 354–55, 34 A.2d at 196. *Vermont Salvage Corp.* is no longer good constitutional law in light of the United States Supreme Court decisions in *Berman v. Parker*, 348 U.S. 26, 32–33 (1954), and *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 510 (1981). The majority of courts which have looked at this question in recent years have upheld zoning for aesthetic purposes. See 3 P. Rohan, Zoning and Land Use Controls § 16.05 (1990).

The Vermont Legislature has now recognized aesthetics as a purpose of zoning regulation. See 24 V.S.A. § 4302(a)(4) (a purpose of zoning is to "encourage and enhance the attractiveness of the Vermont scene"). The Legislature has also specifically authorized local regulation of junkyards "now or hereafter established." 24 V.S.A. § 2246. For purposes of this authorization, "junkyard" means a place of outdoor storage of junk whether or not in connection with a business. 24 V.S.A. § 2241(7).

■ In light of the clear policy of the Legislature, we see no reason to continue to question the validity of zoning regulations intended in whole or in part to protect aesthetics. Further, there is no requirement in our law that specific regulations that are based in part on aesthetic considerations have greater support

in the local plan. The issue of plan conformity must be analyzed under the general standards that have developed in this area.

■ Under 24 V.S.A. § 4401(a) zoning ordinances must have as their purpose the implementation of the town plan and must be in "accord with the policies set forth therein." The test of consistency is set forth fully in *Kalakowski v. John A. Russell Corp.*, 137 Vt. 219, 401 A.2d 906 (1979), as follows: "Zoning is properly conceived of as the partial implementation of a plan of broader scope. It must reflect the plan, but it need not be controlled by it." *Id.* at 225, 401 A.2d at 910 (citations omitted). See also *Smith v. Town of St. Johnsbury*, 150 Vt. 351, 361, 554 A.2d 233, 240 (1988) (applying *Kalakowski* test). The Sandgate town plan attempts to limit development, maintain open space and achieve "the best possible quality of environment for the Town's residents." It exhorts that "conservation and proper management of open land is strongly encouraged." The zoning amendment in issue here sufficiently "reflect[s] the plan." It is not invalid on the grounds relied upon by the trial court.

■■ Defendant raises two additional arguments here. We consider them because they were raised in defendant's pleadings although not addressed by the trial court. The first is that the storage of junk cars is a preexisting nonconforming use that may not now be terminated. The evidence supports defendant's position that most, if not all, of the vehicles were stored on the land prior to the adoption of the zoning amendment. We will accept for purposes of argument that the storage of junk vehicles is the kind of use protected by the preexisting nonconforming use policy, and we will also assume that such a use cannot be prohibited by a new zoning provision. To achieve this status, however, the landowner (or here, possessor) has the burden of showing that the use was lawful under the zoning provisions before the amendment. See *Town of Shelburne v. Kaelin*, 138 Vt. 247, 249, 415 A.2d 194, 196 (1980). Defendant has failed to make this showing. At best, the evidence suggests that the earlier zoning provisions were silent on storage of vehicles. Since the storage of vehicles is not specified as a permitted use, such storage could be lawful only as an accessory usage to the primary residential usage. The ordinance appears to allow such usage where "customarily incidental to a permitted use." We

cannot find on this record that the storage of numerous junk cars and a boat is an accessory use customarily incidental to a residence. See, e.g., *Galliford v. Commonwealth*, 60 Pa. Commw. 175, 178, 430 A.2d 1222, 1224 (1981) (storage of large truck that cannot be screened from public sight is not usage accessory to the residential use of the property).

Second, defendant argues that the zoning amendment was passed solely to eliminate defendant's vehicles and thus is unconstitutional under Chapter I, Article 7 of the Vermont Constitution as legislation that prefers one group over another. See *State v. Ludlow Supermarkets, Inc.*, 141 Vt. 261, 269, 448 A.2d 791, 795 (1982). The test of constitutionality in the absence of a fundamental right or suspect class is whether the law's paramount purpose is reasonably related to the promotion of a valid public interest." *Choquette v. Perrault*, 153 Vt. 45, 52, 569 A.2d 455, 459 (1989). The amendment has a number of purposes, including aesthetics, as discussed above, and the elimination of an unattractive nuisance. See *Vermont Salvage Corp. v. Village of St. Johnsbury*, 113 Vt. at 347–48, 34 A.2d at 192–93. We have no doubt that its purposes are reasonably related to the public interest. The amendment is neutral on its face and applies both to preexisting land uses and future ones. Even if the defendant was the only person storing a large number of junk cars at the time of the passage of the amendment, this does not make the amendment unconstitutional.[6]

Having concluded that defendant lacked standing to challenge the zoning ordinance in defending against plaintiffs' action and that, in any event, his challenges to the ordinance are unavailing, we see no reason why plaintiffs are not entitled to appropriate equitable relief. See *Town of Sherburne v. Carpenter*, 155 Vt. 126, 133, 582 A.2d 145, 149–50 (1990). The dismissal of the complaint and the failure to afford appropriate relief pursuant to the zoning ordinance was therefore error.

## II.

We next consider defendant's challenges to the 1988 injunc-

---

[6] In fact, the evidence indicated that the ordinance amendment was enforced successfully against another town resident with junk cars.

tion issued under the state junkyard statute. Defendant argues that (1) his junkyard preceded the statute and is grandfathered; and (2) he is entitled to be paid compensation under the statute. The junkyard statute was first raised in plaintiffs' complaint under the heading "Public Nuisance." Plaintiffs alleged that defendants violated 24 V.S.A. § 2271, which reads:

> No one may place, discard or abandon a junk motor vehicle in a place where it is visible from the main traveled way of a highway nor may anyone abandon or discard any motor vehicle upon the land of another with or without the consent of the land owner. Motor vehicles so placed, discarded or abandoned are hereby declared to be a public nuisance.

The trial court failed to address this contention in the original hearing, prompting the remand from this Court. At the second hearing, with no further evidence, the court concluded that defendants had violated § 2271 and also that defendants had violated 24 V.S.A. § 2242(2). That section, not pled by plaintiffs, requires a person who operates, establishes or maintains a junkyard to hold a license for such purpose. A junkyard is defined to include a place for outdoor storage "not in connection with a business" that is maintained or used to store "four or more junk motor vehicles which are visible from any portion of a public highway." 24 V.S.A. § 2241(7). The definition was expanded in 1984 to cover junkyards not operated as a business in the wake of our decision in *Vermont Agency of Transportation v. Sumner*, 142 Vt. 577, 579, 460 A.2d 446, 447 (1983), that the prior law required licensing only of a junkyard business.

We can quickly dispose of the licensing theory added in the last hearing before the trial court. Although the court found that defendant held no license under § 2242, there was no evidence under which a finding could be made.[7] Accordingly, we

---

[7] There was evidence that defendant applied for a "junkyard permit" and received a response from the zoning administrator of the Town of Sandgate that junkyards are not a permitted use within the town. The license referred to in § 2242 is issued by the Vermont Transportation Board. See 24 V.S.A. § 2262. Although the town does become involved in the siting of a licensed junkyard, 24 V.S.A. §§ 2251–2256, and the reference in the testimony could have been to the town certificate of approved location, 24 V.S.A. § 2251, the evidence of the correspondence with the town officer is too sparse to support a finding that defendant lacks a state license.

cannot affirm a conclusion that defendant maintained a junk-yard without a license.[8]

Plaintiffs' theory under § 2271 is better grounded in the facts of this case. The statute makes the abandonment of junk cars in a place visible from the main traveled way of a highway a public nuisance. The selectmen of the town have the power to bring actions seeking an injunction to abate a public nuisance within the town. 24 V.S.A. § 2121. There is no question that defendant has placed junk cars on the land of Sonia Siwik so they are visible from the main traveled way of a highway.

Section 2271 was enacted in 1969 and became effective on July 1st of that year. See 1969, No. 98, § 1; 1 V.S.A. § 212 (statutes become effective on July 1st following the date of their passage, unless otherwise specified). The court found that defendant's junkyard came into existence in 1968 and continued to grow thereafter. The statute, by its terms, is prospective and applies to placements of junk cars after its effective date. See *Whitney v. Fisher*, 138 Vt. 468, 470, 417 A.2d 934, 935 (1980) (except for certain limited exceptions, statutes are prospective); *United States v. United States Fidelity & Guar. Co.*, 80 Vt. 84, 97, 66 A. 809, 814 (1907) (statute should not be construed to operate retrospectively unless "its language is so clear as to admit of no other construction"). Thus, based on the evidence, some of the vehicles are subject to the statute and some are not. The order of the court does not distinguish among vehicles; it directs the removal of "any and all unregistered motor vehicles, including the boat, within view of the main traveled way of any public highway." Plaintiffs did not put on evidence that would have allowed the court to specify which vehicles were placed on the property after the effective date of the statute. We cannot affirm the court's injunction based on a violation of 24 V.S.A. § 2271.[9]

---

[8] Although defendant did not raise this issue on appeal, we exercise our discretion to raise it sua sponte where the claim was not raised in plaintiffs' complaint and plaintiffs failed to prove an essential element. See *State v. Ward*, 151 Vt. 448, 449, 562 A.2d 1040, 1041 (1989). This is a case where the fact involved was clearly outside the ambit of the litigation. See *Moonves v. Hill*, 134 Vt. 352, 355, 360 A.2d 59, 62 (1976).

[9] Since we conclude that the injunction was issued improperly, we need not address defendant's claim that he was entitled to compensation under the statute.

In summary, our conclusion is that the plaintiffs have shown a violation of the junk vehicle amendment to the Sandgate Zoning Ordinance and this amendment is valid. Thus, they are entitled to an injunction to enforce the ordinance. On the other hand, we must reverse and remand the order requiring the removal of defendant's vehicles because plaintiffs have failed to show that defendant lacked a state junkyard license and because the injunction is too broad to enforce a violation of § 2271. While the injunction issued to enforce the zoning ordinance will be similar to that issued to enforce the junkyard law, there will likely be some differences in the terms. In any event, a new injunction is needed to specify new dates by which defendants must act to comply with its terms.

*Reversed and remanded for proceedings consistent with this opinion.*