STATE v. C. P. LOCKEY.

(Filed 2 April, 1930.)

1. **Constitutional Law C b—Act prescribing examination of barbers and sanitary standards for shops is constitutional—Police Power.**

    Chapter 119, Public Laws of 1929, known as the Barber's Act, requiring the examination of barbers of the State by a board appointed by the Governor, and prescribing certain sanitary standards for barber shops, relates to the public health and is constitutional as a valid exercise of the police power of the State.

2. **Constitutional Law D a—Barber's Act does not violate "Equal Protection Clause" of the Federal Constitution.**

    The classification of barbers made by chapter 119, Public Laws of 1929, in accordance with the population of the cities and towns wherein they conduct their business (sec. 23) is not an arbitrary or unreasonable one either as relating only to certain persons among the taxpayers or to only certain individuals among the barbers themselves in accordance with the population of the cities and towns in which they carry on their business, and the act bears equally on all of the class and is available to all barbers who are qualified and desire to come under its provisions, and the act is not a discrimination forbidden by the State Constitution nor by the Fourteenth Amendment to the Federal Constitution.

3. **Barbers A a—Chapter 119, Public Laws of 1929 is held to apply to proprietor barbers.**

    Construing chapter 119, Public Laws of 1929, it is *held:* that its provisions apply to proprietor barbers, as in this case the owner and operator of a one-chair barber shop.

**4. Taxation A c—Tax imposed by Barber's Act is for administration of Act and not for revenue, and is constitutional.**

The fees prescribed for barbers who are subject to the provisions of chapter 119, Public Laws of 1929, are for the expenses and enforcement of the act, which is necessary to the public health and welfare, and not an annual occupation tax imposed for revenue, and the payment of the barber's license tax under the Revenue Act does not affect the obligation to pay the fees prescribed by the Barber's Act, and assessment of the fees thereunder is constitutional.

APPEAL by defendant from *Johnson, Special Judge,* and a jury, at August Term, 1929, of CUMBERLAND. No error.

The following charge was preferred against the defendant in the recorder's court of Cumberland County, N. C.:

"J. G. Shannonhouse, being duly sworn, complains and says, that at and in said county, in Cross Creek Township, on or about the 21st day of August, 1929, C. P. Lockey did unlawfully, wilfully violate section 1, chapter 119, of the Public Laws of 1929, by shaving and cutting hair for various persons for pay, without first having obtained a certificate of registration either as a registered apprentice or a registered barber issued by the State Board of Barber Examiners, said acts of shaving and cutting hair having been done in the city of Fayetteville, a city having a population of more than two thousand people, contrary to the form of the statute, and against the peace and dignity of the State."

On the charge an order of arrest was duly made and defendant was tried before the recorder, convicted and fined $10.00, and appealed to the Superior Court. In the Superior Court the defendant was convicted and a like fine was imposed. The defendant duly excepted, assigned errors and appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*C. P. Lockey in propria persona.*

CLARKSON, J. The defendant was convicted of exercising the trade or profession of barbering without obtaining the certificate of registration, as required by the Barber's Act, chapter 119, Public Laws of 1929, and from the judgment upon such conviction, appealed to this Court.

The practice of barbering is defined in section 2 of the act. The act became effective June 30, 1929. The evidence shows that the defendant was operating a one-chair barber shop in the city of Fayetteville, after the effective date of the Barber Act, without having obtained a certificate of registration, as required by that act. This was a violation of section 1 of the act, with the penalty therefor ·fixed in section 21, as a fine of not less than $10.00 nor more than $50.00.

He had paid the annual occupation tax, provided in section 140 of the Revenue Act of 1929, chapter 345, Public Laws. The amount he had paid was $2.00. The Barber's Act required the payment by a barber, as distinguished from an apprentice, of $5.00 for the certificate to be issued, under the act. In addition thereto, it required the payment of $3.00 annual tax, to be applied for the purpose of the act. The payment of the $5.00 tax was once for all.

The defendant contends (1) that chapter 119, Public Laws 1929, is unconstitutional. We cannot so hold.

It is admitted that defendant did what the act prohibited him from doing. The "Barber's Act" is a comprehensive one. A State Board of Barber Examiners is established, consisting of three barbers of experience who have practiced barbering at least five years and are appointed by the Governor for 6, 4 and 2 years. The Governor may remove any member for good cause shown and appoint a successor for the unexpired term. The board, not less than four times a year, shall conduct examinations of applicants for certificates of registration to practice (1) as registered barbers, (2) as registered apprentices.

Section 14 reads as follows: "The fee to be paid by an applicant for a certificate of registration to practice barbering, as an apprentice is three dollars and such fee must accompany his application. The annual license fee of an apprentice shall be one dollar and fifty cents. The fee to be paid by an applicant for an examination to determine his fitness to receive a certificate of registration as a registered barber is five dollars. The annual license fee of a registered barber shall be three dollars. All licenses, both for apprentices and for registered barbers, shall be renewed as of the thirtieth day of June of each and every year, and such renewals for apprentices shall be one dollar and fifty cents, and for registered barbers three dollars. The fee for registration of an expired certificate for registered barbers shall be five dollars, and registration of unexpired certificate of an apprentice shall be three dollars. The fees herein set out are not to be increased by the Board of Barber Examiners, but said board may regulate the payment of said fees and prorate the license fees in such manner as it deems expedient."

SEC. 16. Provides that the State Board of Health shall have authority to make reasonable rules and regulations for the sanitary management of barber shops and barber schools. Have a right to inspect same. From the fees collected under this act $6,000 is appropriated to the State Board of Health to enforce the act.

SEC. 19. "The Board may either refuse to issue or renew, or may suspend or revoke, any certificate of registration for any one or combination of the following causes: 1. Conviction of a felony shown by certified copy of the record of the court of conviction. 2. Gross malpractice or gross incompetency. 3. Continued practice by a person knowingly hav-

ing an infectious or contagious disease. 4. Advertising by means of knowingly false or deceptive statements. 5. Habitual drunkenness or habitual addiction to the use of morphine, cocaine or other habit-forming drugs. 6. The commission of any of the offenses described in section twenty-one, subdivisions three, four and six: (3. Permitting any person in one's employ, supervision or control, to practice as a barber unless that person has a certificate as a registered barber. 4. Obtaining or attempting to obtain a certificate of registration for money other than required fee, or any other thing of value, or by fraudulent misrepresentations. 6. The wilful failure to display a certificate of registration as required by section seventeen)."

SEC. 20 provides for notice and a hearing.

SEC. 21 makes the violation of certain matters a misdemeanor, punishable upon conviction by a fine of not less than ten dollars nor more than fifty ($50.00) dollars.

SEC. 23. "That the provisions of this act shall apply only to those barber shops maintained and operated in those cities and towns of the State with a population of two thousand or more, as shown by United States census of nineteen hundred and twenty, and to shops maintained and operated within a distance of one mile from the boundary limits of such cities and towns: *Provided*, that in towns of less population barbers may willingly come into the association, be bound by its regulations and protected by its benefits: *Provided further*, this act shall apply to all cities and towns in the county of Bladen irrespective of population."

The defendant contends that the General Assembly had no authority to create an expense and arbitrarily and unreasonably classify the citizens and taxpayers of the State and unjustly place the whole burden upon a few thousand of a particular class—the barbers. He further contends that the act makes a further arbitrary and unreasonable classification among the barbers themselves in making the act applicable to towns of 2,000 or more population. We think the act constitutional and not arbitrary.

In *Carley & Hamilton, Inc., v. Snook*, U. S. Supreme Court Reports, Vol. 50, No. 9, at p. 207, it is said: "It is for the Legislature to draw the line between the two classes." *Express Co. v. Charlotte*, 186 N. C., 668; *Clark v. Maxwell*, 197 N. C., 604.

In *S. v. Call*, 121 N. C., at p. 647, citing numerous authorities, it is held: "The statute bearing alike upon all individuals of each class is not a discrimination forbidden by the State Constitution nor by the Fourteenth Amendment. . . . It has been frequently adjudged by the Supreme Court of the United States that the Fourteenth Amendment does not restrict the powers of the State when the statute applies equally to all persons in the same class, and that ordinarily the Legislature is the sole judge of the classification."

The right to establish the qualifications of an "attorney at law" is constitutional and rests in the police power by virtue of which a State is authorized to enact laws to preserve the public safety, maintain the public peace, and promote and preserve the public health and morals. *In re Applicants for License,* 143 N. C., 1.

The power of the General Assembly to regulate the practice of "medicine and surgery" has been held constitutional. *S. v. Van Doran,* 109 N. C., 864; *S. v. Call,* 121 N. C., 643.

In *S. v. Call, supra,* at p. 646, it is laid down that the law-making power of the State, in the exercise of its police power, has a right to require an examination and certificate as to the competency of persons "to teach, to be druggists, pilots, engineers or exercise other callings, whether skilled trades or professions, affecting the public and which require skill and proficiency. Cooley Torts, 289; Cooley Const. Lim. (6 ed.), 745, 746; Tiedeman Police Power, section 87. To require this is an exercise of the police power for the protection of the public against incompetents and impostors, and is in no sense the creation of a monopoly or special privilege. The door stands open to all who possess the requisite age and good character and can pass the examination which is exacted of all applicants alike."

The General Assembly has power to regulate those engaged in the practice of "dentistry." *S. v. Hicks,* 143 N. C., 689. Those engaged in the practice of "osteopathy," "chiropractic and suggestotherapy." *S. v. Siler,* 169 N. C., 315. In *S. v. Scott,* 182 N. C., at p. 880, it is said: "The State in the lawful exercise of its police power has created the State Board of Accountancy and required examinations of applicants to safeguard the public against incompetent accountants." See *S. v. Carter,* 129 N. C., 560; *S. v. VanHook,* 182 N. C., 831; *S. v. Deposit Co.,* 191 N. C., at p. 646.

The United States Supreme Court has frequently held such acts constitutional and within the police power of a State. "Optometrists," *McNaughton v. Johnson,* 242 U. S., 344. "Dentistry," *Graves v. Minnesota,* 272 U. S., 425. "Physicians," *Hawker v. N. Y.,* 170 U. S., 189.

*Mr. Justice Brandeis* in *Lambert v. Yellowley,* 272 U. S., at p. 596, citing numerous authorities says: "Besides, there is no right to practice medicine which is not subordinate to the police power of the States."

The defendant contends "This legislation ushers in, for the first time in this State, the unheard of, unbelievable and unthinkable proposition, to tax the hired man, the daily worker, for exercising the God-given right and privilege, of working with his own hands to earn his bread by the sweat of his brow (face). The journeyman barber is not a business or professional man, he is just the hired worker, to work at one of the proprietor's barber chairs. He has no interest in the shop equip-

ment or fixtures, no responsibility, pays none of the many expenses of the shop. He is just like the contractor's or construction man's carpenter, bricklayer and plasterer. He is hired to work for the proprietor barber, while the carpenter and bricklayer is hired to work for the construction man. The construction man or contractor pays a privilege tax under the Revenue Act, so does the proprietor barber; nobody objects to that; but, who has ever heard of the carpenter or bricklayer being taxed for the privilege of hiring himself out to work with his hands for a living?" Defendant's contentions cannot be sustained. The act comes under the police power of the State.

In 6 R. C. L., sec. 182, at p. 183, speaking to the subject of police power, we find: "The police power is an attribute or sovereignty, passed by every sovereign State, and is a necessary attribute of every civilized government. It is inherent in the States of the American Union and is not a grant derived from or under any written constitution. It has been said that the very existence of government depends on it, as well as the security of social order, the life and health of the citizen, and the enjoyment of private and social life and the beneficial use of property. It has been described as the most essential, at times the most insistent, and always one of the least limitable of the powers of government." It is difficult to define. Blackstone defines it as "the due regulation and domestic order of the kingdom; whereby the individuals of the State, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood, and good manners, and to be decent, industrious, and inoffensive in their respective stations." *Judge Cooley* says that the police power of a State "embraces its whole system of internal regulation, by which the State seeks not only to preserve the public order and to prevent offenses against the State, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others." *Police power:* 1. The power inherent in a government to enact laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society (12 C. J., 904, sec. 412, title Constitutional Law). 2. A power of organization of a system of regulations tending to the health, order, convenience, and comfort of the inhabitants, and to the prevention and punishment of injuries and offenses to the public (31 Cyc., 902). The police power is elastic, stretching out to meet the progress of the age.

The defendant was operating a one-chair barber shop. No doubt he had the peculiar and well-known barber sign to attract the general public to his place of business. The health of the public is of primary

importance. It is a matter of common knowledge that it is as essential to have barbers who are infected with communicable diseases to be eliminated by physical examinations as it is to have this done for infected foodhandlers. Communicable diseases are spread by human contact. Barbers come into intimate contact with their customers and *vice versa*. Certain skin diseases are transmissible; so is vermin. Venereal disease and other diseases can be transmitted, so it was the judgment of the General Assembly to have barbers, barber shops and barber schools subjected to reasonable sanitary regulations for the protection of public health. The whole family, the father, mother and children, now patronize barber shops.

The defendant, as it were, is in the service of the general public and cannot live unto himself; and the health of the general public is well within the police power of the State. The General Assembly in its wisdom has seen fit to place the barber shop, barber schools and barbers on a high plane of health efficiency to protect the public. It goes without saying that barbering requires a degree of skill, proficiency and training. Then again, the act requires a high physical and moral standard for the barber. It requires training, skill and efficiency for the barber and requires sanitary regulations in reference to the barber and barber shop patronized by the general public. All in the class are treated alike. We think the regulations reasonable and the whole act in the interest of skill and proficiency, health and sanitation; and brings the barber and barber shop up to a high standard for the protection of the health of the public.

The present case is not like a recent case decided by the Supreme Court of the United States: An act of the Pennsylvania Legislature, approved 13 May, 1927, required every pharmacy in the State to be owned by licensed pharmacists, and in case of corporations, associations and copartnerships provided that all partners or members thereof shall be licensed pharmacists, except those already engaged in such business. The Louis K. Ligget Company, a Massachusetts corporation, authorized to do business in Pennsylvania and engaged in the drug business in that State at the time of the passage of the above-mentioned act, purchased and proceeded to open up additional pharmacies and made application to the Pennsylvania State Board of Pharmacy for a permit to carry on the business, which was refused. The Attorney-General and district attorney threatened prosecution under the act of 13 May, 1927, on the ground that the members (stockholders) of the Louis K. Ligget Company were not registered pharmacists. The corporation then brought suit, in the District Court of the United States for the Eastern District of Pennsylvania, to enjoin the prosecuting officers from carrying out their threats, on the ground that the act in question violated the due process and equal

protection clauses of the Fourteenth Amendment to the Federal Constitution. The Court below, three judges sitting, denied a preliminary injunction on an agreed case dismissed the bill for want of equity (22 Fed. Reporter (second series) 993), and the plaintiff appealed to the Supreme Court of the United States.

*Mr. Justice Sutherland* delivered the opinion of the Court, *Louis K. Ligget Co. v. Baldridge,* reported in 49 Sup. Ct. Rep., 57, reversing the decree, in which he held among other things that a foreign corporation was a "person" within the Fourteenth Amendment and entitled to enjoin State officers from enforcing an act which infringed its property rights and denied it the equal protection of the laws and that the act in question was not within the "police power" of the State of Pennsylvania in that it did not bear any real or substantial relation to the public health, safety or morals and was therefore an arbitrary and unlawful interference with private business. He said in part that the act "deals in terms only with ownership. It plainly forbids the exercise of an ordinary property right and, on its face, denies what the Constitution guarantees. A State cannot, 'under the guise of protecting the public,' arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them. . . . The claim that mere ownership of a drug store by one not a pharmacist bears a reasonable relation to the public health, finally rests upon conjecture, unsupported by anything of substance. This is not enough; and it becomes our duty to declare the act assailed to be unconstitutional as in contravention of the due process clause of the Fourteenth Amendment." Synopsis of opinion taken from West Publishing Co. Docket, February-March, 1930.

The defendant's second contention is that by a fair and reasonable construction of chapter 119, Public Laws of 1919, the same should be held not to apply to proprietor barbers. Sections 1 and 2 of the act are to the contrary. They make no such distinctions.

The third contention of defendant is untenable, and we think this is fully answered by Mr. Nash, the efficient and capable Assistant Attorney-General, as follows: "The annual occupation tax of the Revenue Act is for the privilege of exercising the trade of barbering and is simply a Revenue Act, whereas, the Barber's Act is an exercise of the public power of the State to secure the public welfare by requiring proven capacity in the barbers and sanitary arrangements both in the barber shop and the tools that are used therein. The fees levied in this act are solely to pay the expenses of its operation and those of proper inspection by the State Board of Health. Section 16 of the act, specifically appropriates $6,000 per annum from the funds derived from the act to

the State Board of Health to pay the expenses of inspection of barber shops in the State of North Carolina. As there are about 4,148 barbers in the State, subject to the provisions of the act, the $5.00 temporary fee and the $3.00 annual fee cannot be so disproportioned to the expenses of enforcing the act as to at all affect its constitutionality, at this point." We find in law

No error.