(No. 30182.—

FEDERAL ELECTRIC COMPANY, INC., Appellee, *vs.* ZONING BOARD OF APPEALS OF THE VILLAGE OF MOUNT PROSPECT *et al.,* Appellants.

*Opinion filed September 18, 1947—Rehearing denied Nov. 17, 1947.*

FRANK M. OPEKA, of Chicago, for appellants.

PAM, HURD & REICHMANN, (J. HERBERT BURKE, and KENNETH L. RICHMOND, of counsel,) all of Chicago, for appellee.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

This appeal was taken by the zoning board of appeals of the village of Mount Prospect and its superintendent of building construction to reverse a judgment of the cir-

cuit court of Cook County which held the zoning ordinance of the village invalid. A constitutional question as to the validity of the ordinance is presented and the trial judge certified that the validity of a municipal ordinance was involved and that the public interest required the appeal be taken directly to this court.

In 1924 Zenith Radio Corporation acquired this property which was located in the northeast corner of the corporate limits of the village. In 1925 the Zenith company constructed a radio broadcasting station and station WJAZ began to broadcast therefrom. The property was devoted to that purpose until about 1931 when the Zenith company abandoned broadcasting and commenced to use the property for experimental broadcasting and laboratory experiments in radionics, radio receivers and transmitters. The improvements which Zenith erected on the premises and which were used in connection with broadcasting consisted of a two-story house, a garage and two steel towers. Since broadcasting has ceased, the house has been used for laboratory experiments. Each tower is 23 feet square at the base, tapering to an 18-inch square at the top. The overall height of each is 156 feet.

In March, 1945, Zenith entered into an agreement with the Federal Electric Company to erect and maintain neon signs on each tower. Such signs consist of a vertical single face sign reading "Zenith" and below it a horizontal sign reading "Radio." The signs on the two towers were identical. The maximum height of any part of the signs is 75 feet and each set weighs 500 pounds. Before the signs were installed the towers were reinforced to carry the additional weight and strain. They were completed and first lighted February 2, 1946.

Previous to the installation of the signs in question, Zenith had maintained a sign with the word "Zenith" on it on the roof of the two-story building. It was removed before the present signs were installed. No signs had been

attached to the towers prior to the ones in question.

The zoning ordinance was adopted May 2, 1944, and became effective May 26, 1944. The ordinance prescribes that the area in which Zenith's property is located shall be classified as a single-family residence district. Section 10 defines a nonconforming use as being, "Any use, lawfully existing or under construction on the adoption date of this ordinance or of a later amendment thereto, which does not conform to the use provisions of said ordinance or amendment shall be known as a nonconforming use." It further provides that such nonconforming use building or structure may be continued, maintained or changed to a conforming use but that it shall not be (a) changed to a use of a less restricted class, nor (b) expanded, nor (c) re-established if discontinued or changed to a conforming use for one year or more, nor (d) continued if the building or structure be destroyed or damaged to the extent of 50 per cent or more of its value. The ordinance designated the superintendent of building construction as the enforcing officer and provided that he should keep a complete record of the location, value, nature and extent of all nonconforming uses.

Subparagraph B of section 1 of the ordinance provides that it shall be unlawful "To expand, change or re-establish any nonconforming use" except in the manner provided by the ordinance, and except after obtaining written permission from the superintendent of building construction.

When the ordinance was adopted, the property was devoted to a nonconforming use and the question is presented as to whether the installation of the neon signs has violated any of the prohibitive parts of section 10 of the ordinance. The contention is that the provision which prohibits expansion of a nonconforming use has been violated.

Before the installation of the signs was started, Federal Electric Company made inquiry as to the necessity of obtaining a permit and was advised that no permit was necessary. After the signs had been installed, Federal's

attention was called to the fact that no permit had been issued for the installation of such signs, and application was made to the superintendent of building construction for such permit. This was refused and thereafter the village took the position that there had been a violation of the zoning ordinance. The case proceeded from the enforcing officer who was charged with the issuing of permits to the zoning board of appeals and from there on *certiorari* to the circuit court. The zoning board sustained the enforcing officer's refusal to issue a permit and held that the installation of the signs was an expansion of a nonconforming use. The trial court reversed the order of the zoning board.

Section 73-1 of the Revised Cities and Villages Act, as amended in 1943, (Ill. Rev. Stat. 1945, chap. 24, par. 73-1,) contains an enumeration of the powers delegated to a city or village to enact a zoning ordinance. Such powers are grouped into eight classes and after their enumeration the statute contains this restriction: "The powers conferred by this article shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted," etc. Then follows an authorization that provision may be made for the gradual elimination of uses, buildings and structures which are incompatible with the character of the districts in which they are made or located. There is nothing in the ordinance which indicates that the village was undertaking to regulate this nonconforming use and thereby eliminate it and bring it into a use that was compatible with others in that district.

The question is squarely presented as to whether the placing of the neon signs on the towers expanded the use to which the property had been previously devoted. The restrictive part of the ordinance which prohibits expansion refers to the nonconforming use of the property. Literally, it provides that the use may be continued but it cannot be

expanded. Webster's International Unabridged Dictionary defines the word "expand," to extend, to enlarge. The application of such definition to the word "expanded" as contained in section 10 would mean that the use that was being conducted on the premises at the time of the adoption of the ordinance could not be extended or enlarged. The placing of the neon signs on the towers did not expand or enlarge the use to which the property was devoted. It may have been installed for advertising purposes, hoping that it would result in a gain of its business, but there is nothing in the record which indicates that such advertising would be followed by any expansion or enlargement of the laboratory experiments that were being conducted on the property. Zenith had the right to continue its nonconforming use and the right to advertise that use and the products it was handling, so long as it did not expand the use to which the property was devoted when the ordinance was adopted.

Section 12 of the ordinance limits the height of buildings, steeples and chimneys to 24 feet. Then follows a sentence that "Structures other than buildings shall not exceed 30 feet in height, except municipal water towers." If it be conceded that the neon signs were structures within the meaning of that word as used in section 12, then the question is as to whether the village had the power to place such an arbitrary limit upon the height of such structures even though the structure was to be maintained in connection with a nonconforming use. On this point the trial court held section 12 invalid. Section 73-1 (chap. 24) provides that "to the end that adequate light, pure air, and safety from fire and other dangers may be secured; that the taxable value of land and buildings throughout the municipality may be conserved, that congestion in the public streets may be lessened or avoided, and that public health, safety, comfort, morals and welfare may otherwise be promoted" the corporate authorities of cities and villages

are empowered, among other things, "To regulate and limit the height and bulk of buildings hereafter to be erected."

The power to regulate the height of a structure is an exercise of the police power. All private property is held subject to a reasonable exercise of that power. It is the law that the State may, in the exercise of the police power, authorize a city or village to impose regulations which limit the height of buildings or structures to be erected where such regulation is reasonably necessary for the protection of the public health, the public safety, or the public welfare. Such power cannot be exercised exclusively for the purpose of gratifying and cultivating aesthetic tastes. *Haller Sign Works* v. *Physical Culture Training School,* 249 Ill. 436; *City of Chicago* v. *Gunning System,* 214 Ill. 628.

The owner's right in property, when unrestricted, extends not only downward under the surface but upward to an unlimited extent, and common experience demonstrates that the latter might sometimes be very valuable. In short, limitations as to the height of structures in a municipal ordinance must bear some relation to the public health, safety or welfare. It does not appear that the regulation contained in section 12 which limits the height of structures to 30 feet is in any way related to the public health, safety or morals. The views herein expressed should not be considered as an expression of an opinion as to the validity or invalidity of the limitation of section 12 which restricts the height of buildings to 24 feet.

For the reasons assigned, the judgment of the circuit court is affirmed.

*Judgment affirmed.*