STATE v. SAM T. BROWN
AND
STATE v. WESLEY C. NARRON.

(Filed 8 April, 1959.)

**1. Constitutional Law § 11—**

Neither the General Assembly nor a municipality may exercise the police power unless its exercise relates to the public health, safety, morals or general welfare.

**2. Nuisances § 6a—**

A junk yard is not a nuisance *per se.*

**3. Constitutional Law § 17—**

A property owner is entitled to use his lands for any lawful purpose unless proscribed by valid restrictive covenant or prohibited by valid exercise of the police power.

**4. Constitutional Law § 11—**

In the exercise of the police power by the State or by a municipal corporation, the thing required to be done must have a real and substantial relation to the object to be attained, otherwise it is an invalid exercise of the police power.

**5. Constitutional Law § 13—**

G.S. 14-399, making it unlawful to place, temporarily or permanently, any trash, refuse, garbage, or scrapped motor vehicles within 150 yards of a hard-surfaced highway unless concealed from view of persons on the highway, with further provision that the statute should not apply to junk yards which are properly screened from the view of persons on the highway, *is held* unconstitutional in that the requirements of the statute have no substantial relationship to the public health, safety, morals or general welfare, since the mere screening of the proscribed materials from the public view can relate only to aesthetic grounds which alone are insufficient predicate for the exercise of the police power.

APPEAL by the State of North Carolina from *McLean, J.,* January Term, 1959 of CLEVELAND.

These defendants were separately indicted in bills charging identical offenses and the cases were consolidated for trial.

The defendants, before entering a plea and before a jury was selected, moved to quash the bills of indictment on the ground that they were violative of Article I, sections 1 and 17, of the Constitution of North Carolina, and the Fourteenth Amendment to the Constitution of the United States.

The bills charge that the respective defendants "on the 18th day of October, 1958, and more than twelve months prior thereto, and since said date, with force and arms, at and in the County aforesaid, did unlawfully and wilfully, before and since the date aforementioned,

place and leave, and caused to be placed and left, temporarily and permanently, trash, refuse, scrap automobiles, trucks, and parts thereof, within 150 yards of a hard surface highway, the same not being concealed from the view of persons on the highway, to wit: Highway No. 74 By-Pass and No. 180, outside of an incorporated town, said condition having existed for more than 12 months and no Justice of the Peace or other court inferior to the Superior Court has taken official cognizance thereof, in violation of G.S. 14-399 against the form of the statute in such case made and provided and against the peace and dignity of the State."

The court below, after hearing the arguments of counsel, held that section 14-399 of the General Statutes of North Carolina is "unconstitutional, void and unenforceable," and sustained the motion to quash the bills of indictment.

From this ruling the State appeals, assigning error.

*Attorney General Seawell, Assistant Attorney General Love, and Bernard A. Harrell, Staff Attorney for the State.*
*J. R. Davis, A. A. Powell for defendant.*

DENNY, J.   G.S. 14-399, which the defendants are charged with violating, provides: "It is unlawful for any person, firm, organization or private corporation, or for the governing body, agents or employees of any municipal corporation, to place or leave or cause to be placed or left, temporarily or permanently, any trash, refuse, garbage, scrapped automobile, truck or part thereof within one hundred and fifty yards of a hard-surfaced highway where the highway is outside of an incorporated town, unless the trash, refuse, garbage, scrapped automobile, truck or part thereof, is concealed from the view of persons on the highway.

"This section does not apply to domestic trash or garbage placed for removal, nor to junk yards which are the property of bona fide junk dealers and which are properly screened or fenced from the view of persons on the highway. * * *"

The remaining portions of the statute are not relevant here.

The defendants are junk yard operators, engaged in the business of buying scrapped or wrecked automobiles, salvaging the parts therefrom and selling them to the general public.

The real question for determination is whether or not the provisions of G.S. 14-399 are in conflict with and in violation of rights guaranteed to these defendants by Article I, sections 1 and 17, of the Consti-

tution of North Carolina and the Fourteenth Amendment to the Constitution of the United States.

The precise question posed on this appeal has not been decided by this Court. The State contends, however, that the cases of *Hinshaw v. McIver,* 244 N.C. 256, 93 S.E. 2d 90, and *Ornoff v. Durham,* 221 N.C. 457, 20 S.E. 2d 380, are determinative of the question.

In the *Hinshaw* case the plaintiff sought to obtain an order compelling the defendant, as tax collector of the City of Burlington, to issue him a license to engage in the business of a junk dealer within the City of Burlington. The City of Burlington was not made a party to the action. The plaintiff's license had been revoked because of his failure to comply with ordinances regulating the use and operation by junk dealers of junk yards, requiring, among other things, that the yard be enclosed by a solid fence not less than eight feet high; that no junk or material be kept on the outside of the fence; that gates, when not in use, be kept closed; and that no placards be affixed or displayed on the fence. This Court in its opinion said: "The power to regulate the operation of a junk yard within its borders is within the police power of the city." This is true, but such regulation would have to be pursuant to a duly authorized and valid ordinance. All that the *Hinshaw* case decided was that "the Court would not undertake to decide the validity of ordinances and orders of the City of Burlington in an action to which the City was not a party."

In *Ornoff v. Durham, supra,* the plaintiff instituted an action against the City of Durham and its tax collector to obtain relief by mandamus wherein the plaintiff sought a decree directing the defendants to issue to him a license to conduct his junk business. His license had been withheld under a city zoning ordinance which prohibited the operation of a junk yard in certain areas of the city. This Court said: "If the junk business of plaintiff existed at the place alleged at the time of the passage of the ordinance, it may, according to the plain provision of the ordinance, continue; if, on the other hand, it did not so exist at the time of its passage it may be prohibited."

We do not construe either of the above cases to have adjudicated the question involved on this appeal.

The State raises this inquiry: If a municipality may regulate junk yards in the exercise of its police power, how can it be said that an act of the General Assembly intended to accomplish the same purpose is unconstitutional? The answer to this inquiry is that neither the General Assembly nor a municipality may exercise the police power unless its exercise relates to the public health, safety, morals, or general welfare. *S. v. Harris,* 216 N.C. 746, 6 S.E. 2d 854, 128

A.L.R. 658; *S. v. Lockey*, 198 N.C. 551, 152 S.E. 693; *S. v. Whitlock*, 149 N.C. 542, 63 S.E. 123, 129 Am. St. Rep. 670; *Meyer v. Nebraska*, 262 U.S. 390, 67 L. Ed. 1042, 29 A.L.R. 1446; *Liggett Co. v. Baldrige*, 278 U.S. 105, 73 L. Ed. 204; 11 Am. Jur., Constitutional Law, section 303, page 1075, et seq.

In the last cited case, the Supreme Court of the United States, speaking through *Justice Southerland,* said: "The police power may be exerted in the form of state legislation where otherwise the effect may be to invade rights guaranteed by the Fourteenth Amendment only when such legislation bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare."

The case of *Commonwealth v. Christopher*, 184 Pa. Super. 205, 132 A 2d 714, states: "The business of operating a junk yard is a legitimate enterprise which, while offending the aesthetic taste, does not constitute a dangerous business or one known to be inherently injurious or harmful to the public. By itself, it does not adversely affect the public peace or safety, nor can it be designated as a fire or health hazard."

In the absence of a zoning law or restriction imposed by deed, a purchaser of real estate has the right to use it for any lawful purpose so long as he does not create a nuisance affecting health, safety, or morals. *Menger v. Pass*, 367 Pa. 432, 80 A 2d 702, 24 A.L.R. 2d 562. We have found no authority to support the view that a junk yard is a nuisance *per se. Vermont Salvage Corp. v. Village of St. Johnsbury*, 113 Vt. 341, 34 A 2d 188.

In *City of New Orleans v. Southern Auto Wreckers*, 193 La. 895, 192 So. 523, the defendant was convicted of the violation of a city ordinance which required, among other things, that all junk yards should be enclosed with a substantial feather-edged board fence, not less than seven feet high. The admitted purpose of the ordinance was to keep the sidewalks and streets free from obstructions that might make them unsafe. Defendant's junk yard was enclosed with a mesh wire fence, some seven feet high, and it was conceded that such fence accomplished the purpose of the ordinance. The provision in the ordinance requiring a fence was not attacked, but the part requiring it to be a feather-edged board fence was attacked as being unconstitutional, and the Court so held. The Court said: "Dealing in junk is a legitimate and harmless business. Junk yards are not necessarily nuisances. They do not affect the public health, nor do they offend against public morals. Individuals have the constitutional right to use their private property for junk yards as long as such use does

not offend public morals or jeopardize the health and safety of the public. In speaking of the right of individuals to use their private property as they see fit, as long as their use of it is not offensive or dangerous, it is stated in American Jurisprudence, Volume 11, sec. 279, p. 1037: 'Nevertheless, the owner has the right to erect such structures or to use the property for such legitimate purpose as he may see fit, utilizing such portions of it as he pleases, as long as in so doing he in no manner injuriously affects the public health, safety, morals, and general welfare. Any law abridging rights to a use of property, which use does not infringe the right of others, or limiting the use of property beyond what is necessary to provide for the welfare and general security of the public is not a valid exercise of the police power.' " The decision in this case is in accord with the conclusion reached in *Vassallo v. Bd. of Com'rs. of City of Orange*, 125 N.J.L. 419, 15 A 2d 603, and *Town of Vestal v. Bennett*, 199 Misc. 41, 104 N.Y. Supp. 2d 830. See also Anno:—45 A.L.R. 2d, Regulation of Junk Dealers, page 1425, et seq.

In the case of *Town of Vestal v. Bennett, supra,* the Court, in considering the identical question before us, said: "It is difficult to imagine what danger to public health, morals or safety exists in connection with the operation of a junk yard on an unenclosed lot that could be removed or prevented by the erection of a solid board fence six feet high. Certainly there is nothing immoral about a junk yard. Neither does it constitute any menace to public health or if, by reason of unsanitary conditions being permitted, it should become a menace, putting a board fence around it would not be a reasonable solution of the problem. No danger to public safety is apparent except perhaps that materials from the yard might find their way onto the highway if piled too close, but to prevent this a solid board fence would not be required as was pointed out in the case of the *City of New Orleans v. Southern Auto Wreckers*, 193 La. 895, 192 So. 523."

The statute involved in this appeal is rather unusual. The preamble to the original act, Chapter 457, Public Laws of 1935, makes no reference to junk yards, but only to the dumping of trash, refuse, or garbage, adjacent to the highway, thereby destroying the scenic beauty of such highway and injuriously affecting the health and comfort of those using the same. Furthermore, its provisions apply only to junk yards located on hard-surfaced highways. If there were any substantial relationship between the requirements of the statute and the public health, safety, morals, or any other phase of the general welfare, other than aesthetic, persons traveling on any public highway which has not been hard-surfaced, would be entitled to the

same consideration and protection which the act purports to give persons traveling on hard-surfaced highways.

In our opinion, the statute, as it relates to junk yards, was enacted solely for aesthetic reasons—that is, to make our hard-surfaced highways, particularly those which carry heavy interstate traffic, more attractive. We think the provisions of the statute support this view. It states that it shall not apply "to junk yards which are the property of bona fide junk dealers, and which are properly screened or fenced from the view of persons on the highways."

There is no contention by the State that these defendants are not bona fide junk dealers. Therefore, the sole charge against them is their failure to build a fence of such character between their junk yard and the highway as may be necessary to conceal the junk yard from the view of persons on the highway.

If any conditions presently exist or have existed on the premises of the defendants during the period set out in the bills of indictment that would warrant the exercise of the police power by the State in order to correct them, it must be conceded that building a fence as required by the statute would not correct such conditions. In the exercise of the police power by the State or by a municipal corporation, the thing required to be done must have a real and substantial relation to the object to be attained, otherwise it is an invalid exercise of the police power.

We are in sympathy with every legitimate effort to make our highways attractive and to keep them clean; even so, we know of no authority that vests our courts with the power to uphold a statute or regulation based purely on aesthetic grounds without any real or substantial relation to the public health, safety or morals, or the general welfare. *Turner v. New Bern,* 187 N.C. 541, 122 S.E. 469; 25 Am. Jur., Highways, section 616, page 902.

"It is within the power of the Legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefuly patrolled. Nevertheless, it is held that aesthetic conditions alone are insufficient to support the invocation of the police power, although if a regulation finds a reasonable justification in serving a generally recognized ground for the exercise of that power, the fact that aesthetic considerations play a part in its adoption does not affect it validity." 16 C.J.S., Constitutional Law, section 195, page 939, et seq.; *Gionfriddo v. Town of Windsor,* 137 Conn. 701, 81 A 2d 266; *Federal Elec. Co. v. Zoning Bd. of Appeals of Village of Mt. Prospect,* 398 Ill. 142, 75 N.E. 2d 359; *City*

*of Watseka v. Blatt*, 320 Ill. App. 191, 50 N.E. 2d 589; *Merced Dredging Co. v. Merced County*, (D.C. Cal.), 67 F. Supp. 598.

In our opinion, the statute is unconstitutional and we so hold. Consequently, we shall not discuss the questions raised with respect to its invalidity because 35 counties have heretofore been exempted from the provisions of the statute.

The ruling of the trial court quashing the bills of indictment will be upheld.

Affirmed.