BACHMAN *v*. STATE.

5036                                                     359 S. W. 2d 815

Opinion delivered September 10, 1962.

*W. G. Wiley,* for appellant.

*Frank Holt,* Atty. General, by *Dennis W. Horton* and *Sam H. Boyce,* Asst. Attys. General, for appellee.

PAUL WARD, Associate Justice. Appellant, Richard D. Bachman, was convicted in the Municipal Court of Batesville and fined $25 for maintaining an "automobile graveyard" within 500 feet of State Highway 69, which is paved. On appeal to circuit court his conviction was affirmed, and this appeal follows.

Appellant was charged with violating Act 212 of 1955. Section 1 defines an automobile graveyard as "any place where five (5) or more junk, wrecked or non-operative automobiles or other vehicles are deposited, parked, placed, or otherwise located". Section 2 says it shall be unlawful for any person to maintain or operate an automobile graveyard within *one-half mile* of any paved highway of this State. Section 3 allows four months after the act becomes effective to remove the junked cars. This section also provides "that the provisions of this act shall not apply to any automobile wrecking yard or graveyard which is *now* being actively operated as a going business." (Emphasis added.) (Ark. Stats. §§ 76-129—76-133)

Because of the disposition we are making of the case it is unnecessary to discuss at length or pass upon all the points appellant relies on for a reversal. It is our conclusion that said Act 212 is unconstitutional, and that the judgment of the trial court must be reversed.

There can be no dispute about the fact that any right the legislature has to prevent the location of an automobile graveyard along a public highway stems from its police power. This is true because every citizen has a common right to own and possess property so long as it does not interfere with the general health and welfare of the public. In the case of *Beaty* v. *Humphrey, State Auditor,* 195 Ark. 1008, 115 S. W. 2d 559, this Court, in construing Act 313

of 1937 (Ark. Stats. §§ 71-501—71-522) which regulated barbers, quoted with approval the following:

" 'If it has any such right, it comes within what is termed the police power. There have been many definitions of the term 'police power' and many cases before the courts of the country assailing statutes as not being within that power.' "

It is just as well settled by many decisions of this and other courts that when a state exercises its police power to regulate a lawful business such regulation must bear a direct relation to the general welfare. In the *Beaty* case, *supra,* the Court found such a relationship existed, and consequently upheld said Act 313. Four years later the legislature passed Act 432 of 1941 which complemented said Act 313 by giving a Board the right to fix minimum wages which a barber could charge. This act was tested in the case of *Noble* v. *Davis,* 204 Ark. 156, 161 S. W. 2d 189, where we held it was an invalid exercise of the police power. The Court reached this conclusion even though Section 1 of Act 432 specifically provided that "The purpose of this Act is the protection of the public safety, health, welfare and general prosperity. . . ." After referring to the above language the Court said:

"The fact that the Legislature so declared the purpose of the act does not make it so, if, in fact, the declared purpose has no substantial connection with the real purpose of the act."

The Court then went on to point out that no such connection did exist in fact.

In the case under consideration a very sound argument could be made to show that an automobile graveyard, although located near a public highway, in no way affects the public safety, health, welfare, and general prosperity of the people. If that argument be accepted it must be concluded that only the esthetic senses of the traveling public would be offended or affected. There is respected authority that the police power of the state is not broad enough to include only esthetic considerations. This line

of reasoning would necessarily result in declaring said Act 212 unconstitutional. We do not choose, however, to base our decision in this case upon the above line of reasoning, because it appears to us that the general trend of modern judicial thinking is to broadening the scope of the police power to include esthetic considerations, especially when connected with other considerations. Both the narrow and the broad views are well and sufficiently expressed in a quotation from the case of *W. C. Farley, etc. v. Patrick C. Graney, State Road Commissioner, etc.*, W. Va., 119 S. E. 2d 833, which dealt with a state of facts similar to those of this case. The Court there said:

"It would serve no useful purpose to engage in an extended discussion of the place of esthetic considerations in the enactment of legislation under the police power. It can not be gainsaid that at this time the great weight of authority is to the effect that esthetic considerations *alone* will not justify the exercise of legislative authority under the police power. But on the other hand, it is perhaps just as well established that esthetic considerations may be given due weight in connection with other factors which support legislative exercise of the police power. It is clear also that there is in this day a marked tendency to accord greater importance to esthetic considerations."

In this modern age when our highway system is being expanded and improved, and when more attention is being given to their beautification for the attraction of tourists, we deem it wise not to close the door on the aforementioned tendency to broaden the scope of the state's police power.

2. We have concluded, however, that the judgment of the trial court must be reversed because said Act 212 is arbitrary and unreasonable in attempting to effect its intended purpose, which could only be to protect the traveling public from unsightly views. The courts have many times held that the operation of a junk yard or an automobile graveyard is a lawful business. The Act itself recognizes this fact by allowing the continuance of those already actively in business. See also: *Town of Vestal* v.

*Bennett,* 199 Misc. 41, 104 N. Y. S. 2d 830; *City of New Orleans* v. *Southern Auto Wreckers,* 193 La. 895, 192 So. 523; and *State* v. *Brown,* 250 N. C. 54, 108 S. E. 2d 74.

The state cannot of course destroy or injure a person's private property without just compensation and without due process of law. It may regulate its use under certain circumstances but only if the imposed regulations are reasonable and not arbitrary. The state cannot by statute, under the guise of the police power, impose arbitrary or unreasonable restrictions upon private property or its use. *Quesenberry* v. *Estep,* 142 W. Va. 426, 95 S. E. 2d 832; *Carter* v. *City of Bluefield,* 132 W. Va. 881, 54 S. E. 2d 747; *Lawton* v. *Steele,* 152 U. S. 133, 14 Sup. Ct. 499, 38 Law Ed. 385; *Anderson* v. *Jester,* 206 Iowa 452, 221 N. W. 354; *Merrill* v. *City of Wheaton,* 356 Ill. 457, 190 N. E. 918. To the same effect, the United States Supreme Court in the case of *Williams* v. *Arkansas,* 217 U. S. 79, 30 Sup. Ct. 493, 54 Law Ed. 673, at page 88 of the U. S. Reports, quoted with approval the following:

"Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business or occupation they shall apply, are questions for the State to determine, and their determination comes within the proper exercise of the police power by the State, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and the personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary interfered with or destroyed. . . ."

The Act under consideration here, in effect, imposes a penalty of $100 a day for each day a person keeps or maintains 5 "non-operative" automobiles within one-half mile of any paved highway, regardless of whether they can be seen or not. By no stretch of the imagination could it be maintained that 5 such cars located one-half mile away from the highway, hidden behind a hill, a forest, a high fence, or in a building, could offend the esthetic senses of a traveler along said highway, and certainly

not his peace, health or happiness. To that extent, then, it must be concluded that the Act is arbitrary and unreasonable, and bears no relation to the purpose intended to be achieved, which could only be to keep travelers from having to look at an unsightly junk yard.

Nor are we convinced by the argument that the Act is valid as it applies to appellant's situation who maintains more than 5 non-usable cars in open view within 500 feet of the highway. The only alternative left to appellant under the terms of the Act is to abandon his business or subject himself to a fine of $100 a day. The Act is arbitrary and unreasonable because it affords him no opportunity at all to save his business by obstructing it from the view of those persons who travel the highway. This could be done by erecting a high wall or fence or by inclosing the cars in a building. If he did not of these things he would still be subject to the penalty provided in the Act. Putting it another way, we hold Act 212 to be arbitrary and unreasonable because it could injure or destroy a lawful business while it affords the owner no opportunity to preserve the same by making changes or alterations without offending the intended purpose and purview of the Act.

Consequently the judgment of the trial court must be, and the same is hereby, reversed.

McFADDIN, J., concurs.

ED. F. McFADDIN, Associate Justice (Concurring). I agree that the Act here under consideration is unconstitutional. See *State* v. *Brown*, 250 N. C. 54, 108 S. E. 2d 74.

The purpose of this concurrence is to indicate my view that the State can accomplish what it is seeking to do—*i. e.*, police junk yards on or near highways—by declaring the operation of such yard to be a privilege, and by designating some agency or authority to grant permits, upon reasonable rules and regulations as to conditions, sanitation, maintenance, etc. For the benefit of those interested, I cite the following: *State* v. *Kievman,* 116 Conn. 458, 165 A. 601, 88 A.L.R. 962; and see also annotations

entitled, "Regulation of Junk Dealers," in 88 A.L.R. 970, and 45 A.L.R. 2d 1391; and annotation entitled, "Automobile Wrecking Yard or Place of Business as Nuisance," in 84 A.L.R. 2d 653. See also generally *Vt. Salvage Corp.* v. *Village of St. Johnsbury* (Vt.)., 34 A. 2d 188.