STATE OF NORTH CAROLINA v. MACK H. JONÉS

No. 8028SC1190

(Filed 18 August 1981)

**1. Counties § 5.1; Municipal Corporations § 30.3— county zoning ordinance—fencing of automobile wrecking yard—vagueness**

A county zoning ordinance requiring junkyards or automobile graveyards to be surrounded by an opaque fence or by a wire fence with vegetation, requiring the owner to utilize "good husbandry techniques with respect to said vegetation, including but not limited to, proper pruning, proper fertilization and proper mulching," exempting garages and repair shops which had the primary purpose of repair and requiring junkyards not be within 100 yards of the center line of a public road is not considered unconstitutionally vague as a man of common intelligence would understand what is meant and required by the ordinance's provisions.

**2. Counties § 5.1; Municipal Corporations § 30.4— county zoning ordinance—aesthetic consideration only—lawful exercise of police power**

An ordinance requiring junkyards or automobile graveyards to be surrounded by an opaque fence or by a wire fence and vegetation does not violate the Fourteenth Amendment to the United States Constitution or the Law of the Land Clause of Art. I, § 19 of the North Carolina Constitution because it regulates for aesthetic purposes only.

APPEAL by the State from *Kirby, Judge.* Judgment entered 22 October 1980 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 9 April 1981.

Defendant operates an automobile graveyard known as Mack's Used Car and Truck Parts. On 29 July 1980 a warrant was issued charging him with a violation of Buncombe County Ordinance Number 16401. This ordinance provides in part:

"SECTION FOUR.        PROHIBITIONS

Except as hereinafter provided, it shall be unlawful after the effective date of this Ordinance for any person, firm or corporation, or other legal entity to operate or maintain in any unincorporated area of Buncombe County a junkyard or automobile graveyard within one hundred yards of the center line of any "public road" within one quarter mile of any "school" or within any residential area. For the purposes of this Ordinance, a junkyard or automobile graveyard shall be within a residential area if there are twenty-five (25) or more housing units within a geographical area comprised of a one-fourth (¼) mile wide strip contiguous and parallel to the ex-

ternal boundary lines of the tract of real property on which said automobile graveyard or junkyard is located.

SECTION FIVE.        EXCEPTIONS

A. This Ordinance shall not apply to service stations, repair shops or garages.

\* \* \*

"B. Junkyards or automobile graveyards may be operated and/or maintained without restrictions if and providing that said junkyard or automobile graveyard shall be entirely surrounded by a fence, or by a wire fence and vegetation. In the event that a junkyard or automobile graveyard shall be surrounded by a wire fence, vegetation shall be planted on at least one side of the wire fence and continguous [sic] to the wire fence. The vegetation shall be of a type that will reach a minimum height of six (6) feet at maturity and shall be planted at intervals evenly spaced and in close proximity to each other so that a continuous, unbroken hedgerow will exist to a height of at least six (6) feet along the length of the wire fence surrounding the junkyard or automobile graveyard when the vegetation reaches maturity. In the event that white pine or hemlock trees are chosen for use as vegetation, such white pine or hemlock trees may be planted as seedlings provided that the seedlings have an average height of at least six (6) inches. Each owner, operator, or maintainer of a junkyard or automobile graveyard to which this Ordinance applies and who chooses to surround said junkyard or automobile graveyard with a wire fence and vegetation shall utilize good husbandry techniques with respect to said vegetation, including but not limited to, proper pruning, proper fertilizer and proper mulching, so that the vegetation will reach maturity as soon as possible and will have maximum density and foliage. Dead or diseased vegetation shall be replaced at the next appropriate planting time."

On 25 September 1980, Judge Styles granted a motion to quash the warrant on the ground that the ordinance was unconstitutional. The State appealed to superior court and on 22 October 1980 the superior court granted a motion to quash on the ground the ordinance was unconstitutional.

The State appealed.

*County Attorney Floyd D. Brock and Assistant County Attorney Stanford K. Clontz, for Buncombe County.*

*Penland and Barden, by Stephen L. Barden, III, and Talmadge Penland, for defendant appellee.*

WEBB, Judge.

The appellee contends the superior court must be affirmed for two reasons. He argues first that the ordinance is unconstitutionally vague and second, that the ordinance violates his substantive due process rights by attempting to regulate for aesthetic values only.

[1]   We consider first the question of vagueness. An ordinance "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process." *State v. Vestal,* 281 N.C. 517, 521, 189 S.E. 2d 152, 155 (1972). The defendant contends that the requirement that junkyards or automobile graveyards be surrounded by an opaque fence or by a wire fence and vegetation which will reach a height of six feet at maturity and shall be planted so that a continuous unbroken hedge will exist, requires the owner to guess at the type of tree to plant and the manner of planting. We believe men of common intelligence would know the type of hedge that is required by this ordinance. He also contends the requirement that the owner must utilize "good husbandry techniques with respect to said vegetation, including but not limited to, proper pruning, proper fertilizer and proper mulching" sets a standard which would be difficult for an expert husbandryman to interpret. We believe a man of common intelligence would understand that he would be required to tend to the hedge in such a manner that it would grow to the required height and thickness in the normal growing period for the type of plants used.

The defendant also contends there is a problem of definition in that the ordinance does not apply to garages and repair shops which have the primary purpose of repair and receive 50 percent of their gross income from repair. We believe again that a man of common intelligence would not have to guess at the meaning of this exemption.

The defendant next says that the requirement that the junkyard not be within 100 yards of the center line of a public

road is unconstitutionally vague. We point out the ordinance in the case sub judice does not suffer from the deficiency of the ordinance in *State v. Vestal, supra.* In that case the Supreme Court of North Carolina held that an ordinance was unconstitutionally vague which required junkyards to be built "50 feet from the edge of any public road adjoining the yards." The Court held there was no way of determining what was intended by the term "edge of any public road." In the case sub judice we do not believe a man of common intelligence would have difficulty determining what is the center line of a public road. The defendant also contends the requirements that a junkyard or automobile graveyard not be built within one-quarter mile of any school or within a residential area are too vague to be constitutional. We believe men of common intelligence would understand that the regulated business may not be placed within a quarter mile of the edge of the school grounds. A residential area is defined as an area having "twenty-five (25) or more housing units within a geographical area comprised of a one-fourth (¼) mile wide strip contiguous and parallel to the external boundary lines of the tract of real property on which said automobile graveyard or junkyard is located." We do not believe a man of common intelligence would have difficulty understanding the meaning of this definition. We hold the ordinance is not unconstitutionally vague.

[2] The State concedes that the subject ordinance was enacted to promote aesthetic values only. Substantive due process requires that the General Assembly or a municipality may exercise its public power only as it promotes the public health, safety, morals or general welfare. The question posed by this appeal is whether this ordinance which requires action for aesthetic purposes only promotes the public welfare to such a degree that it is within the police power of the State. In *State v. Brown* and *State v. Narron,* 250 N.C. 54, 108 S.E. 2d 74 (1959), our Supreme Court held that a statute which prohibited placing "scrapped automobiles" within 150 yards of a paved highway was not within the police power of the State; the only purpose of the statute being to improve the aesthetic quality of the paved highway. In *Horton v. Gulledge,* 277 N.C. 353, 177 S.E. 2d 885 (1970), our Supreme Court reiterated this holding by way of dictum. The Court in that case recognized that the United States Supreme Court in *Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954) had held that the Fourteenth Amendment to the United States Constitution did not proscribe state action which regulated

for aesthetic purposes only but said that Art. I § 19, the Law of the Land Clause in the Constitution of North Carolina, does proscribe such action by the State.

In *State v. Vestal, supra,* the Court noted that the State did not contend it could regulate otherwise lawful activity for aesthetic reasons only and for that reason the question was not considered. The Court did observe that there was a growing body of authority from other jurisdictions which allowed this type of regulation. In *A-S-P Associates v. City of Raleigh,* 298 N.C. 207, 258 S.E. 2d 444 (1979) our Supreme Court held that the City of Raleigh could by zoning ordinance prohibit buildings which did not comply with the historical characteristics of a neighborhood. The Court recognized that this had the effect of allowing the City of Raleigh to regulate the appearance of buildings but held that historic preservation promoted the general welfare in several ways. The Court specifically declined to say that the promotion of aesthetic values alone came within the police power of the State. In *Cumberland County v. Eastern Federal Corp.,* 48 N.C. App. 518, 269 S.E. 2d 672 (1980) it was held that an ordinance regulating the size of highway signs could be based on aesthetic considerations. The Court was careful to limit the holding to the facts of that case and pointed out that there were other considerations upon which the ordinance could be based such as the economic effect of an unsightly sign on the adjoining property, the hazard to traffic, and the fact that the restriction on signs in that case was a part of a comprehensive zoning ordinance. We do not believe we can affirm the superior court in the case sub judice consistently with Cumberland County. We hold that Buncombe County Ordinance Number 16401, as amended, does not violate the Fourteenth Amendment to the United States Constitution or the Law of the Land Clause of the North Carolina Constitution because it regulates for aesthetic purposes only. In reaching this conclusion, we take into account that the duty on the defendant to build a fence or grow a hedge is not too burdensome as compared to the public benefit to Buncombe County in improving the appearance of the highways. If the automobile graveyard had been forbidden at this location, we might have reached a different result.

We realize that our opinion in the case sub judice is inconsistent with *State v. Brown, supra.* We believe the trend in the

cases decided by our Supreme Court is such that *Brown* no longer. governs.

Reversed and remanded.

Judges HEDRICK and ARNOLD concur.